90 So.2d 320 (1956)
Peggy Jo BRIGHTWELL, a minor, by her father and next friend, Burton U. Brightwell, Jr., Appellant,
v.
Melville J. BEEM and Glea Beem, Appellees.
Burton U. BRIGHTWELL, Jr., Appellant,
v.
Melville J. BEEM and Glea Beem, Appellees.
Supreme Court of Florida. Special Division A.
July 25, 1956.
Rehearing Denied November 26, 1956.
J.D. Hobbs, Jr., of Cramer, Smith & Hobbs, St. Petersburg, for appellant.
*321 T. Paine Kelly, Jr., of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellees.
THORNAL, Justice.
The appellant in each of the above cases, who was plaintiff below, seeks reversal of a judgment entered pursuant to a directed verdict in favor of the appellees, who were defendants below, in separate actions for damages resulting from the alleged negligent operation of a public bathing beach.
The point to be determined by the appeal is whether the evidence submitted by the plaintiff was sufficient to establish negligence of the appellees as against a motion for directed verdict submitted by the defendants at the close of the plaintiffs' case.
In the summer of 1950, Peggy Jo Brightwell, age 15, was a paying customer at an amusement park and bathing beach operated by the defendants-appellees on the shore of Lake Ellen in Hillsborough County. From the record it appears that the facilities were similar to those offered by recreation and amusement parks throughout Florida. Various diving facilities were available. In addition there was constructed from the shoreline of the lake for a distance of approximately 35 feet a wooden platform. The depth of the water beneath the platform increased from zero at the shoreline to some four to six feet at the end thereof. The height of the platform above the water level varied from one and one-half to three feet, depending on the level of the water. Although the answer of the defendants was to the effect that the platform was not offered as a diving facility, the record shows that patrons of the amusement park customarily used it for such purpose with the knowledge of appellees. It had been so used during the afternoon and evening preceding the accident hereafter described and defendant, Glea Beem, actually witnessed Peggy Jo preparing to dive from the platform on the occasion of the unfortunate occurrence.
At about 8:30 in the evening, Peggy Jo attempted to dive off the side of the platform approximately two-thirds the distance from the shore at a point where the record suggests that the water was three to three and one-half feet deep. At that time, the floor of the platform was about two feet above the surface of the water. As she undertook to dive, it appears that the girl's right foot slipped or twisted, whereupon she entered the water in a more or less distorted position and apparently struck the bottom with the right side of her head and right shoulder, thereby producing what the doctor described as a severance of the spinal cord at the lower cervical level. The injury resulted in complete paralysis of the girl in all four of her extremities; a condition which she will suffer the rest of her life.
The complaint is grounded on the alleged negligence of the defendants-appellees in failing to maintain the area in a safe condition, in failing to warn, by the posting of signs or otherwise, that the area was dangerous for diving and in failing to place guardrails along the sides of the platform to prevent patrons from diving or attempting to dive in water which was allegedly too shallow for the purpose.
The defense was grounded on the proposition that the platform was installed for swimming and sun-bathing but not diving, that there was a sign warning "Don't Dive From This Dock," and that the proximate cause of the alleged injury was the negligence of the girl in the manner in which she attempted to dive rather than the alleged negligence of the defendants in the maintenance of the swimming area.
Nowhere does the record at this point show that the alleged sign was posted. On the contrary, this record in the absence of testimony on behalf of defendants sustains the conclusion that there was no such sign.
The whole problem resolved by the trial judge evolved around the question of whether any negligence on the part of the defendants was established by the plaintiff's witnesses and whether the contributory negligence of the girl produced her injury rather *322 than the alleged negligence of the defendants.
At the close of the plaintiff's case, the trial judge was of the view that the plaintiffs had failed to prove any negligence on the part of the defendants and thereupon granted a motion for a directed verdict in favor of the defendants. A judgment was thereupon entered accordingly and after denial of the motion for new trial, plaintiffs appealed. Reversal of the judgment is now sought.
Appellants contend that evidence in this state of the record must be read in the light most favorable to them, and that there was adequate evidence of negligence to justify submitting the cause to the jury.
The appellees contend that the plaintiff's own witnesses established the proposition that the defendants were not guilty of any negligence but on the contrary that the girl suffered the injury as the result of the accidental twisting of her foot and her own carelessness in diving. They assert that the proximate cause of the injury was the negligence of Peggy Jo rather than the alleged negligence of the appellees and there was no duty to warn against an obvious danger.
At the outset, we are confronted with the established rule that in considering the propriety of a directed verdict for the defendant, the court is required to evaluate the testimony offered in the cause in the light most favorable to the plaintiff. Every reasonable intendment deducible from the evidence must be indulged in the plaintiff's favor. Rodi v. Florida Greyhound Lines, Fla. 1952, 62 So.2d 355.
When we measure the evidence in the case before us by the rule above announced, we must necessarily take into consideration the relationship between the parties as well as the actual facts and circumstances surrounding the occurrence of the alleged injury. Here, the girl was a paying customer who for a consideration accepted the facilities tendered to her by the appellees. The appellees operated a public amusement area and were charged with the degree of care customarily imposed upon the operators of such facilities. This degree of care is well summarized in 52 Am. Jur., Theaters, Shows, Exhibitions, Etc., Sec. 71, p. 315, as follows:
"The owner or proprietor of a bathing or swimming resort or pool as a place of public amusement is not an insurer of the safety of his patrons, but he must exercise ordinary and reasonable care and prudence to have and maintain his place and all appliances intended for the use of patrons in a reasonably safe condition for all ordinary, customary, and reasonable uses to which they may be put by patrons, and to use ordinary and reasonable care for the safety of his patrons, and he may be liable for injury to a patron from breach of his duty."
We ourselves have announced the same rule in Pickett v. City of Jacksonville, 155 Fla. 439, 20 So.2d 484; Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720; Turlington v. Tampa Electric Co., 62 Fla. 398, 56 So. 696, 38 L.R.A.,N.S., 72.
We do not overlook the limitation stated in the rule to the effect that the amusement park should be maintained in a reasonably safe condition for all ordinary, customary and reasonable uses to which they may be put by patrons. We do not here intend to excuse the patron of an amusement park from the exercise of reasonable care and caution for his own safety commensurate with his acquaintance with the area as well as with his knowledge of any dangerous conditions or devices involved in the amusement enterprise. Our problem here is to determine whether the record at this stage reveals either that the girl was guilty of contributory negligence as a matter of law or that the defendants below were guiltless of negligence as a matter of law.
It is our conclusion that there is in this record at this stage of the cause an *323 area of proof which might justify a jury in concluding that there was negligence on the part of the appellees which could have been the proximate cause of the girl's injury. We find this in the answer of the appellees themselves when considered in the light of the testimony that was offered in the court below. By their answer, the appellees specifically deny that the dock or platform was provided for diving purposes and on the contrary alleged that it was provided merely for swimming and sun-bathing. Despite the fact that appellees had provided this platform for a limited purpose nonetheless closely related to swimming activities, it was nevertheless established by this record that appellees were thoroughly acquainted with the fact that their customers were using the platform for diving purposes. A jury in this state of the record would be justified in concluding that if the platform area was not intended as an area suitable for diving then it was the responsibility of the owners of the amusement park to see to it that their patrons were suitably warned of the restricted usage to which the area might safely be put.
In the case at bar the testimony showed that one of the defendants actually saw Peggy Jo preparing to dive on the occasion that resulted in her injury. It shows that the platform was being used for diving throughout the afternoon and evening in spite of the fact that the owners themselves conceded that it was not intended for usage as a diving area. There is no evidence of any warning, by sign or otherwise, and we cannot conclude that the girl was necessarily familiar with the potential danger of using for diving this area which was not intended for that purpose by the owners.
Again, we are not intending to hold that this conduct on the part of these defendants constituted negligence as a matter of law. We do here intend to hold that under the circumstances related above it was a matter within the province of the jury to determine whether the proximate cause of this girl's injury was her own negligence or carelessness in diving or whether it was the failure of the defendants below to warn her not to use the particular area of their amusement park for a purpose other than the admittedly intended purpose.
Despite the difficulties in defining proximate cause, the established rule is that unless the minds of reasonable men could not differ as to the cause of an injury, ordinarily the problem of determining the existence of proximate cause and contributory negligence is peculiarly one for a jury. We are frank to concede that the problem posed by the instant case is both difficult and close and we can understand why a trial judge who does not have available to him the opportunity to analyze carefully and cautiously a written transcript of the record might in the course of a trial, when he is called upon to make prompt and immediate decisions, come to the conclusion that there was a failure of proof of negligence that would justify taking this case away from the jury. Had he had the opportunity, however, to evaluate all aspects of the cause on the basis of a complete transcript of the record, as we have had, we are inclined to believe that he would have submitted the problem to the jury.
We have a natural reluctance to disagree with a decision of this nature arrived at by an able and experienced trial judge. Nevertheless, in this instance we are compelled to conclude that a directed verdict for the defendants at the close of the plaintiff's case should not have been given.
For the reasons stated, the judgment appealed from will have to be reversed and the cause remanded for a new trial.
Reversed and remanded.
DREW, C.J., TERRELL, J., and CARROLL, Associate Justice, concur.