130 So.2d 631 (1961)
BILTMORE TERRACE ASSOCIATES, Appellant,
v.
Lawrence KEGAN, a minor, by his father and next friend, Bernard M.S. Kegan and Bernard M.S. Kegan, individually, Appellees.
No. 60-391.
District Court of Appeal of Florida. Third District.
May 29, 1961.
*632 Gotthardt, Christie & Shepard and Kenneth L. Ryskamp, Miami, for appellant.
Sams, Anderson, Alper, Meadows & Spencer, Miami, for appellees.
PEARSON, Judge.
The defendant, hotel, appeals a final judgment based upon a jury verdict in a negligence action brought by Lawrence Kegan, a minor, and Bernard Kegan, Lawrence's father. The plaintiff, Lawrence, was a guest in the defendant's hotel and was injured when he dived into the ocean from a walled patio-pool area, which, at the time of the accident, protruded into the water. The controlling questions are: (A) Whether the facts presented to the jury, viewed in the light most favorable to the plaintiffs and with the benefit to the plaintiffs of all reasonable inferences, established a prima facie case of negligence; (B) Whether under the facts presented by the evidence and with the benefit of all presumption and in the light most favorable to him, the plaintiff, Lawrence Kegan, was guilty of contributory negligence as a matter of law. We hold that negligence was not established and that the plaintiff was guilty of contributory negligence as a matter of law and reverse.
The negligence alleged in the complaint was "* * * carelessly * * * and negligently maintained, operated, or controlled the premises without keeping them in a reasonably safe condition." The injured plaintiff, Lawrence Kegan, was a minor of fifteen, almost sixteen, and had been a guest of the hotel for some twelve days at the time of the accident. The defendant was the operator of an oceanfront, patio-pool resort hotel and as a part of its accommodations provided a patio-pool area between the front of the hotel and the ocean. This structure was located landward of the mean high water line, but the tides on occasion brought the water up to the wall and to a depth of several feet. The ocean side of the patio-pool area was enclosed by a wall, approximately four feet in height. The shore and the ocean are considerably lower in level than the patio-pool area. Beyond the wall was a short projection of the patio area, which sloped downward. In addition, two concrete beams extended easterly some four feet beyond the wall.
The plaintiff had been swimming for six years but prior to the day of his accident, *633 he had not gone to the end of the patio-pool area. On that day he slept until noon; after breakfast he met Tim Henderson, a friend, in the patio-pool area. Tim was also a guest of the hotel and both boys were on a vacation from out of state. On this day the pool was closed because of bad weather, and no lifeguard was on duty, nor was any other person of authority present to oversee the recreation area.
The plaintiff estimated that he talked with his friend for five or ten minutes while leaning against the wall at the east end of the patio-pool area. Because of the wind and high tides the ocean splashed against the bulkhead, which was the east end of the patio-pool area. The waves were uncommonly large and the water was murky.
After talking with the plaintiff for awhile Tim Henderson climbed over the wall and stood on the slanted ledge on the opposite side of the wall. He waited for a minute or two for a large wave, then dived into the ocean. After Tim's dive the plaintiff climbed over the wall, onto one of the projecting beams. While standing on the beam he looked down at the water and it looked deep. After observing the water for awhile he dived in. The plaintiff struck the bottom in the very shallow water and the blow caused a complete and permanent paralysis of his body from the neck down.
The defendant hotel moved for a directed verdict at the close of the plaintiffs' case and at the conclusion of all the evidence. The jury found negligence and returned its verdict for the plaintiffs. The defendant moved for a judgment in accordance with its motion for a directed verdict which motion was denied.
In evaluating the evidence on appeal the test is whether this court, after viewing the case most favorably to the successful litigant, can say that the jury as reasonable men could not have found the verdict that was entered upon the evidence before them. Bruce Construction Corp. v. State Exchange Bank, Fla. 1958, 102 So.2d 288, 291; Ingraham Super Market, Inc. v. Major Appliances, Inc., Fla. App. 1960, 121 So.2d 164, 166, 167. In addition, it is well to recognize that the issues of negligence and contributory negligence are ordinarily for a jury's determination. E.g., Deane v. Johnston, Fla. 1958, 104 So.2d 3, 65 A.L.R.2d 957; Saunders v. Kaplan, Fla.App. 1958, 101 So.2d 181. Nevertheless, there are instances in which the court must make these determinations as a matter of law. E.g., 6345 Collins Avenue v. Fein, Fla. 1957, 95 So.2d 577; Nelson v. Ziegler, Fla. 1956, 89 So.2d 780, 782. Such cases do not disparage the rule, but demonstrate rather that there are a few cases where the legal effect of the evidence is so clear that there is but one possible conclusion to be drawn and it is then the duty of the court to direct a verdict. In such cases the viewing of the evidence in the light most favorable to the unsuccessful party does not authorize the court to overlook or to ignore uncontroverted facts which appear from the evidence.
Inasmuch as negligence grows out of a breach of a duty we must examine the instant case to determine the duty which the hotel owed to its guest who was injured. This duty has been set out by the Supreme Court of Florida in an analogous case, Brightwell v. Beem, Fla. 1956, 90 So.2d 320, 322, where the court quoted from 52 Am.Jur., Theatres, Shows, Exhibitions, etc., section 71, page 315, as follows:
"The owner or proprietor of a bathing or swimming resort or pool as a place of public amusement is not an insurer of the safety of his patrons, but he must exercise ordinary and reasonable care and prudence to have and maintain his place and all appliances intended for the use of patrons in a reasonably safe condition for all ordinary, customary, and reasonable uses to which they may be put by patrons, and to use ordinary and reasonable care for the safety of his patrons, and he may be liable for injury *634 to a patron from breach of his duty."
The Supreme Court further pointed out that it had announced the same rule in Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720; Pickett v. City of Jacksonville, 155 Fla. 439, 20 So.2d 484; Turlington v. Tampa Electric Co., 62 Fla. 398, 56 So. 696, 38 L.R.A.,N.S., 72.
It is suggested that the hotel violated this duty in one or more of the following ways: 1. It failed to maintain a lifeguard on duty. 2. It failed to maintain a guard rail. 3. It failed to post signs or other warnings against use of the subject wall or the beams protruding therefrom as a means of diving or jumping into the ocean. 4. It maintained the two concrete beams, which extended easterly some four feet from the wall, so that the same were susceptible to the inference by an uninformed, inexperienced minor patron of the hotel, that they were or had been the foundation of a diving platform. We have examined the evidence in the light of each one of these suggested bases for negligence. We think that the plaintiffs, in all of the above contentions, overlook the fact which appears uncontrovertedly from the evidence; that there was a four-foot wall at the end of the patio area. The plaintiff found it necessary to climb over this wall and assume a precarious position outside of the wall area in order to get a footing from which to dive. There was no other way by which one could enter the ocean except to climb over the wall. One who stood at the wall could clearly observe that it was located at the edge of the ocean. To require a warning under such circumstances would be as ludicrous as requiring a sign on the top of an office building reading "don't jump off here".
The duty of care for resorts providing bathing facilities is clear. But there is no presumption of negligence on the part of the operator of such a resort on a showing that an injury has been sustained by one rightfully on the premises. Pinehurst Co. v. Phelps, 163 Md. 68, 160 A. 736.
In the Brightwell case, above cited, the Supreme Court concluded that the directed verdict for the defendant at the close of the plaintiff's case should not have been given. The opinion in that case points out [90 So.2d 322]:
"It is our conclusion that there is in this record at this stage of the cause an area of proof which might justify a jury in concluding that there was negligence on the part of the appellees which could have been the proximate cause of the girl's injury. We find this in the answer of the appellees themselves when considered in the light of the testimony that was offered in the court below. By their answer, the appellees specifically deny that the dock or platform was provided for diving purposes and on the contrary alleged that it was provided merely for swimming and sun-bathing. Despite the fact that appellees had provided this platform for a limited purpose nonetheless closely related to swimming activities, it was nevertheless established by this record that appellees were thoroughly acquainted with the fact that their customers were using the platform for diving purposes. A jury in this state of the record would be justified in concluding that if the platform area was not intended as an area suitable for diving then it was the responsibility of the owners of the amusement park to see to it that their patrons were suitably warned of the restricted usage to which the area might safely be put.
"In the case at bar the testimony showed that one of the defendants actually saw Peggy Jo preparing to dive on the occasion that resulted in her injury. It shows that the platform was being used for diving throughout the afternoon and evening in spite of the fact that the owners themselves *635 conceded that it was not intended for usage as a diving area. * * *."
There is an essential difference between a platform or dock which is provided for purposes allied with bathing and a patio-pool area terminating in a wall, which bars ingress to the ocean. The physical arrangement of the four-foot wall and the projection connected on the ocean side of the wall negated the idea that the wall and projection were intended for diving purposes. Certainly the defendant does not, in the exercise of reasonable care, have to post a warning sign on every wall or juncture off which someone might jump. Also, as appellees point out, the actions of the young are not always predictable, but the duty of the hotel operator in the present instance did not extend to a foreseeability of such unpredictable actions.
In view of our holding that the plaintiffs failed to prove negligence on the part of the defendant, it is not necessary for us to discuss in an extended fashion our holding that the plaintiff was guilty of contributory negligence as a matter of law. We have not overlooked the fact that the plaintiff being from a state not bordering on the ocean was not familiar with the ocean, nor the fact that during the twelve days that he had been a guest of the hotel he had not gone to the east end of the patio area. The duty of a plaintiff to exercise reasonable care as to his own safety when engaged in the sport of diving has been set forth by the Supreme Court of Florida in the case of Ryan v. Unity, Inc., Fla. 1951, 55 So.2d 117, 118. There the court held that had the injured party observed the depth of the water in the pool, such observance would have disclosed that there was insufficient water for swimming or diving. The court further stated that under these circumstances the hotel owner could not be charged with liability for failure of the plaintiff "`to exercise that degree of care and prudence which an ordinary prudent person would ordinarily exercise'", and "`perceive that which would be obvious to him upon the ordinary use of his own senses.'" It is our holding that under the facts of this case the plaintiff would have been barred from recovery by his contributory negligence as a matter of law.
Upon either of the issues discussed the trial court was under a duty to direct a verdict for the defendant at the close of the plaintiffs' case, and it was error to refuse to do so. Accordingly, the judgment must be reversed.
Reversed.
HORTON, C.J. concurs.
MILLEDGE, STANLEY, Associate Judge, dissents.
MILLEDGE, STANLEY, Associate Judge (dissenting).
In holding the trial judge in error for refusing to direct a verdict for the defendant, I think that the court has given little or no consideration to certain significant circumstances in this case. I think that it is inevitable that when a court substitutes its judgment for that of a jury on a complexity of facts requiring days to present and involving such subtle evaluations as the existence and extent of a duty to avoid exposing others to an unreasonable risk of harm; the duty of one to take due care for his own safety especially when the plaintiff is a child; what is reasonably foreseeable; the question of causation; the question of notice to the defendant of the use of the premises which caused the plaintiff harm; it must justify itself by selecting certain factors, giving them its own evaluation, and running the grave risk of ignoring other facts which the jury had the right to consider. I think that it is impossible to put down on a few pages (or perhaps upon a hundred) each shred of evidence and each of many permissive inferences deducible from each shred, which the jury heard, saw, and evaluated in a long trial.
I suffer from the same limitations in dissent. In stating the factors which the *636 jury had before them, but which the court now treats casually or not at all, I cannot state them all. Quite likely, I am not even aware of them all for I am in a very poor position to judge all of the evidence as compared to the position of each juror and of the trial judge.
There are, however, certain factors, observable even at secondhand, which prevent me from characterizing each of the jurors as unreasonable. These are the peculiar significance of the defendant hotel's location on the ocean shore; the fact that the hotel had notice of previous conduct by its guests and employees of a kind with that which harmed the plaintiff; the fact that the plaintiff was a boy of fifteen; the fact that the plaintiff observed his companion, a fellow guest, dive safely into the ocean before himself doing so; the fact that the water appeared deep enough for safe diving. Even a few of the inferences the jury were entitled to draw from these facts convinces me that the trial judge was not himself unreasonable in permitting the jury to decide the case. Each of the facts mentioned bears both on the question of negligence and of contributory negligence. An ocean front resort hotel charges more for otherwise equal facilities than other hotels, so it must anticipate that its guests reasonably expect to use what they are paying for, and that its guests most likely to entertain this expectation are its young and agile ones, whose foreseeable attributes include a facility for surmounting small physical obstacles and an underdeveloped sense of apprehension. The hotel must reasonably anticipate that some of such young guests have had no previous experience with the facilities of ocean front hotels or with ocean depths near the shore generally, or at this particular spot, specifically. The plaintiff was from St. Paul; had had no previous experience with the ocean or with this particular facility. The pool being closed and no life guard on duty, the plaintiff and his companion, also a hotel guest, walked to the end of the pool, also serving as an ocean bulkhead, and looked over the wall. This court describes the apparent depth of the ocean at the wall by saying that "the ocean splashed against the bulkhead." A photograph in evidence, not taken at high tide, and which a defendant's witness said fairly represented the scene at the time of the accident, shows water at the base of the wall with nothing to indicate its depth. Plaintiff's older companion told plaintiff that he had been a frequent visitor at the hotel and had frequently dived from the projecting beams, of which activity the jury might reasonably infer, the hotel had notice. The wall, from the pool side, is a bit less than four feet high.
The jury, considering the situation as it appeared to the plaintiff as he looked over the wall contemplating a dive into the ocean from one of the projecting beams several feet below and about three or four feet above the water, had the duty to decide, from all the circumstances, whether there was sufficient likelihood of young guests entering the ocean from over the wall, so that such an event was foreseeable. The jury was not required to view this in the light of the wisdom acquired by hindsight. Nor was it required to consider the question as though the hotel limited its guests to veterans of the war with Spain. The jury was entitled to consider that many times in the past the ocean had been so entered both by guests and employees. An employee had on two previous occasions dived into the ocean from this place. One of the hotel guests had so dived "numerous times" and had jumped into the ocean at least a couple of dozen times on almost every visit to the hotel of which he was a frequent and regular visitor. A former hotel employee testified that he had run people off the wall and considered it part of his job to do so. Since the hotel ordinarily kept a life guard at the pool, the jury could reasonably infer that the hotel had knowledge that its guests did in fact enter the ocean over the wall. I do not see how the jury can be held to have acted unreasonably in concluding that the hotel should foresee *637 that its young guests would enter the ocean over the wall, and that if they dived in they were unreasonably exposed to risk of serious harm. If the hotel decided that, notwithstanding the reasonable expectations of some of its guests to enter the ocean, it did not wish to provide a reasonably safe way to do so, then the jury could find that the hotel should communicate this to its guests in some way calculated to be understood. Any number of ways were available  a verbal warning to each guest; a sign at the end of the pool; a life guard to warn each visitor at the pool; a wall high enough to prevent easy passage. These are some.
I agree with the implicit assumption of the court that the condition was dangerous as to which there was a duty to warn. The court concludes, as a matter of law, that the danger was so obvious that specific warning was superfluous. There are many situations in which a duty to maintain safe premises is not fulfilled merely by a warning. See 2 Harper and James, Law of Torts, § 27.13. Assuming that the duty here is fulfilled by a warning, and a warning not expressed but a warning implied from the circumstances is relied on, then the implications of warning must clearly refute the implications of the invitation. A strong invitation is not refuted by an ambiguous warning. In view of the nature of this resort facility, the plaintiff's ignorance of the premises, the appearance of the ocean, the presence of the projections, the immature judgment of the plaintiff, the lowness of the wall, the knowledge that guests went over the wall to the ocean, I think that the jury was well within its function in finding that the danger was not then obvious to the plaintiff although, of course, it is now obvious to us all. I agree that the operator of an office building need not erect a sign informing visitors that a jump to the street will prove fatal. The facts in this hypothetical case seem to me to bear no resemblance to the present case. If the operator of the building, for a price, provided the top for those wishing to enjoy the view, he would be under a duty to warn (if a warning would suffice) that the apparently safe railing was actually fragile. The purpose of the warning would not be to convey the superfluous information that a fall to the street would be fatal, but to convey the information that the railing was apt to break if leaned on, a fact which the operator, but not the patron, is expected to know.
The age of the plaintiff is significant on the question of contributory negligence as it is on the question of negligence. The jury was required to determine whether the plaintiff acted reasonably in his protection in the light of (1) the plaintiff's ignorance of the ocean in general and this facility in particular; (2) his knowledge that his companion had frequently dived from this spot; (3) the assumption that if it were dangerous to do so the hotel would have expressly warned; (4) the observation of his companion diving into the ocean safely a moment before the plaintiff did; (5) the implied invitation of a low wall and projecting beams over the ocean; and (6) the immature judgment of a fifteen-year-old boy.
I think that the present case is contrary to previously decided cases in Florida on many points, some of which are: First, where there is room for reasonable differences of opinion as to what inferences to draw from conceded facts, the jury should decide. Bruce Construction Corp. v. State Bank, Fla. 1958, 102 So.2d 288. Second, a verdict should not be directed unless under no view of the evidence could an opposite verdict be rendered, since right to jury trial is organic. Orr v. Avon Florida Citrus Corp., 130 Fla. 306, 177 So. 612. Third, more care is required of operators of places of amusement than is required of ordinary businesses. Mosqueda v. Paramount Enterprises, Inc., Fla.App. 1959, 111 So.2d 63. Fourth, the requirement of care is greater when a duty is owed to infants. Burdine's Inc. v. McConnell, 146 Fla. 512, 1 So.2d 462. Fifth, a sign of danger to an adult is not necessarily so to a child. City *638 of Jacksonville v. Stokes, Fla. 1954, 74 So.2d 278, 279, where the court affirmed against the sole attack that a verdict should have been directed. The court there observed that "it takes more indication of danger to alert a child than to alert an adult * * *. They * * * must be presumed to have less ability to take care of themselves than adults have." Sixth, "The question of the child's prudence and judgment is itself a question of fact," and therefore for the jury. City of Jacksonville v. Stokes, supra, in which the opinion noted that counsel had cited no case and the court was aware of none in which the contributory negligence of a child has been decided as a matter of law. I question whether ever before have appellate judges, who never saw or heard the minor plaintiff, decided how much intelligence and judgment he had. At least when the plaintiff is an adult we can measure his conduct against the mythical "reasonable man" but when the question is whether an infant plaintiff has used due care for his own safety, there is no such standard. The degree of maturity of judgment of the particular child must be specifically determined by the trier of fact. Seventh, on facts similar to the present case, the Supreme Court of Florida, in Brightwell v. Beem, Fla. 1956, 90 So.2d 320, reached the opposite conclusion. The court reversed the trial judge for directing a verdict against the plaintiff, a fifteen-year-old girl, hurt in diving from a wooden dock not intended for such purpose by the operator of an amusement facility. There was no wall there, as here, but this is not a difference in kind but only in degree. No two cases are exactly alike and the aspects of this case, already mentioned, show many factors bearing on apparent danger, not present in the Brightwell case.
I do not consider Ryan v. Unity, Inc., Fla. 1951, 55 So.2d 117, 118, to be applicable. There, the trial judge (the writer of this dissent) granted summary judgment to the defendant on the ground that the hotel owed no duty to furnish a safe swimming pool to its patrons during the dark hours of early morning. The Supreme Court affirmed on the basis of contributory negligence, which assumes the negligence of the defendant for failing to maintain a safe pool. The plaintiff there was an adult; here a child. There, "even a casual observation * * * would have disclosed that the pool did not contain sufficient water for swimming or diving"; here, the water appeared deep enough. There, the plaintiff had been drinking; no self-inflicted disability is present here. There, the plaintiff had not been told that others had safely done what he was about to do; as was here the case. There, the plaintiff did not see someone safely dive a moment before; here, he did.
Having dissented from the decision and opinion in this case, I wish to lodge my dissent to the whole process of emasculating the jury function. I can find no basis for assuming that because judges are experts on rules of law that they are also experts on all the rules of life  the rules the jury use in evaluating facts. Because of their number, the jury probably have a greater range of experience and background than the trial or appellate judges. Common sense is not the monopoly of any occupational group.
The circumstance that laymen are as competent as the law trained to evaluate everyday facts does not account for constitutionally guaranteed jury trials. The recent colonials knew a great deal about unrestrained power of all kinds including judicial power. In their own time, English juries had time and again refused to convict for political crimes as demanded by the royal judges and prosecutors. The early American aversion to equity was the result of fear of trial by judge alone.
The fear of power showed itself in our peculiar arrangement of checks and balances. The same fear insisted on lay participation in the judicial process. In Florida, the legislature long ago forbade trial judges to comment to the jury on the evidence. Lord Acton's famous dictum *639 neither requires nor justifies exclusion of the judiciary. Extension of power is usually well meant and unconscious. The techniques of the summary judgment and the directed verdict are seductively appealing to the ego. The formula is simple: "Reasonable men cannot disagree with me." Since this is the era of specialization, is the whole responsibility of justice in the hands of the legal experts as military policy is in the hands of military experts? Admittedly experts are necessary, but should they make the basic decisions in a free society? Who is such an expert that his decision should start an atomic war? I would be more comfortable to have a jury rather than the General Staff so decide. We made a commitment to ideas and institutions which includes ultimate dependence on the common sense of our peers whether exercised at the ballot box or in the jury room. If we do not stay committed by conviction, we should stay committed by necessity. What else is a democratic society to do and stay democratic?