MILLEDGE, STANLEY, Associate Judge
(dissenting).
I think that it was error to enter a summary judgment for the defendant. After having dinner with her companions on a boat used as a restaurant, the plaintiff, a short, heavy woman of 66, slipped and fell to the deck while ascending an inclined ramp to the dock. The depositions revealed no cause for the slip and if negligence in causing the slip had been the basis for the action, the problem would be entirely different. The act of negligence here relied on is the failure to have a handrail on the ascending right side (on which the plaintiff fell) so that if patrons slipped the fall would be to the ramp and not to the deck below. From the deposition of *462 the plaintiff it appeared that as she slipped she reached for the nonexistent rail and fell to the deck, as a result of which one leg was amputated at the knee.
One is more apt to stumble on an inclined gangplank than on a level surface and while this does not render the maintenance of such a facility negligence it may create a duty to provide a handrail. Certainly this is true where a fall may not merely be to the floor traversed but over the side to a floor below. No one would suggest that a store should provide handrails along the counters on level floors but this is not the same as the absence of railings on the mobile stairs used for entering or leaving planes. The severity of the fall, if one occurs, may be a more important factor in creating a duty to provide protection, than the likelihood of its occurrence, as in the duty to provide railings on top of an observation tower where the footing is as secure as on the ground.
Here both factors were present. A fall was more likely than on a level floor. The ramp was inclined at a ratio of 1 in 6 and it was unsecured on the deck end to allow for the movement of the boat. A fall, if one occurred, might well be to the deck below. Even the consequences to this plaintiff and others of like build and age, of a fall to the deck, required no clairvoyance to foresee. The defendant actually foresaw the risks to customers since it provided a handrail on the descending right side of the ramp, which was about six feet wide. It knew that customers left the boat by walking on the right ascending side of the ramp, and no instructions, written or oral, were given to ascend on the left side only.
Since trial judges are not required to analyse the evidence and show how there is no issue for the jury to try, nothing is stated here except the bare conclusion. As an abstract proposition it is possible to suppose that the Circuit Judge found that a duty to provide a handrail existed but that the plaintiff was contributorily negligent, as a matter of law, in failing to notice that there was a handrail on one side only and in failing to ascend on that side. In view of all the cases on contributory negligence being a problem for the jury, I think this assumption can be ruled out as preposterous.
Judges, like jurors, have various ideas as to social responsibility. The circumstance that a particular judge may believe that a patron of a business establishment must expect danger as though he were a spy behind the enemy’s lines should not mean that a jury is precluded from taking what seems to me a less primitive view of the business operator-business invitee relationship. Since a restaurant operator (with any competition) would have no business if customers felt that going upon the premises was like boarding a space ship, a jury is not unreasonable which holds the operator to the kind of care he devoutly wishes his customers to expect. All that such a jury is saying is that the operator should not have it both ways; the profit from the business gained by confidence reposed but no loss when the confidence was misplaced. Since confidence, not only in the product, but in the personal safety of the customer while he procures it, is an indispensable ingredient of business, a growing standard of care is simply an integral part of business. This is not at all inconsistent with the fact that when the specific problem is whether a business invitee was justified in reposing confidence the operator invokes, overtly or tacitly, the argument of harsh burdens on business, sometimes to the extent that it is socialistic to hold a business operator to the same standard of care the operator induces the customer to expect. Quite the opposite seems evident to me.
It seems to me that the very essence of the jury system is that, freed of the occupational predilections of the professionals— the judges, representatives of lay society may not only decide what facts exist but, to some extent, the social significance of *463 those facts. The jury system and the voting franchise rest upon the same basic assumptions. The fact that a judge may disagree with how some jurors vote should not empower him to cancel such votes. That is the frequent effect of the summary judgment. Since I have recently made some observations on what to me is a silent attack on the jury system, (dissent in Biltmore Terrace Associates v. Kegan, Fla.App.1961, 130 So.2d 631) there is no point in repetition beyond expressing my conclusion that the praiseworthy object of relieving court congestion should not, and need not, result in the erosion of the jury function.