311 So.2d 146 (1975)
FIRST ARLINGTON INVESTMENT CORPORATION, d/b/a La Playa Apartment Hotel, and La Playa of Redington Beach, Inc., D/B/a La Playa Apartment Hotel, Appellants,
v.
Kenneth E. McGUIRE, Appellee.
No. 72-174.
District Court of Appeal of Florida, Second District.
April 9, 1975.
Rehearing Denied May 6, 1975.
*147 David G. Hanlon of Shackleford, Farrior, Stallings & Evans, Tampa, and William F. Blews of Chambers & Blews, St. Petersburg, for appellants.
Michael J. Freedman of Levine & Freedman, Tampa, for appellee.
HOBSON, Acting Chief Judge.
Appellants appeal a final judgment entered against them and in favor of the appellee. Appellants at all times material to this action owned a resort apartment hotel known as La Playa Apartment Hotel. This hotel was situated on the Gulf of Mexico and included in its facilities was a pier extending from the beach approximately 220 to 300 feet out into the gulf. The pier was shaped like a capital "T" with the top of the "T" at the end of the pier farthest away from the beach. The pier had a railing around the entire border approximatley *148 four feet in height. The pier was approximately 10 to 12 feet from the surface of the water, depending on the tides. At the top of the "T" portion there were benches.
The pier was used for the benefit of appellants' guests and at the entrance there was a sign reading "guests only." There were no signs warning persons not to dive from the pier into the gulf waters nor were there any signs indicating the depth of the waters as you walked out on the pier. The evidence showed that the pier was used for fishing and that adults as well as minors dived frequently from the pier into the gulf. One such person who used the pier for diving was the son of an assistant manager of the La Playa Apartment Hotel.
On July 1, 1967, the appellee was an invitee of the appellants and on the day in question he walked to the end of the pier farthest from the beach, stepped upon a bench, then onto the railing. He looked into the water, could not see the bottom, and the water looked deep. He then dived into the water. Appellee had been on the pier once the night before in the dark. There is testimony that, prior to appellee's dive, at least three persons made statements to the effect that the water was shallow and appellee should not dive. The people making the statements testified that appellee made no response, did not look toward them or indicate in any way that he heard them. Appellee denied that he heard any such statements. There is no conflict in the evidence that in the area into which appellee dived you could not see the bottom nor discern that there was a sandbar in the area. There was evidence that there were swimmers in the area back toward the beach from the end of the pier. When appellee dived, his head struck the bottom, resulting in complete paralysis from his shoulders down.
Appellee brought suit against appellants on the theory that he being an invitee there was a duty upon appellants to warn him of latent or concealed dangers of which they were aware. The evidence showed that prior to 1963 persons dived from the end of the pier into the water without accident or injury; that in the fall of 1963 a hurricane caused a sandbar to form at the end of the pier in the area into which the appellee dived; that shortly after the creation of the sandbar by the hurricane, one James Parham dived from the end of the pier and suffered a broken neck due to the shallow water.
Appellants first contend that the trial court erred in allowing into evidence the fact that the pier was used for diving purposes in view of the fact that the pier was not designed for diving purposes or that the appellants in any manner invited the guests to use the pier for diving purposes.
Appellants also contend that they were not negligent as a matter of law, that the appellee was contributorily negligent as a matter of law,[1] that his negligence was the sole proximate cause of his injuries, and that he assumed a known risk. It is well settled that a person who invites others on his premises must maintain the premises in a reasonably safe condition and must warn of dangerous conditions existing thereon. This duty extends not only to the ordinary use for which the premises are intended but also to the customary use of the premises by the invitee with the knowledge of the proprietor. Schweikert v. Palm Beach Speedway, Fla. 1958, 100 So.2d 804.
In Brightwell v. Beem, Fla. 1956, 90 So.2d 320, a 15-year old girl was an invitee of the bathing beach operated by the defendant. There was a wooden platform or dock extending approximately 35 feet into the water from the shoreline. The depth of the water beneath the platform went *149 from the shoreline to some four to six feet at the end of the platform. The girl, at approximatley 8:30 in the evening, attempted to dive off the side of the platform at a distance from the shore where the water was three to three and one-half feet deep. The platform was about two feet from the surface of the water. The girl's right foot slipped or twisted as she undertook to dive, causing her to enter the water in a distorted position, striking the bottom with the rightside of her head and shoulder and causing a severance of the spinal cord. The injury resulted in complete paralysis of the girl's four extremities.
The defense was grounded on the proposition that the platform was installed for swimming and sun-bathing but not for diving. The record in that case showed that patrons customarily used the platform for diving with the knowledge of the defendant. Likewise, as in this case, there was no evidence of any warning or that the injured person was familiar with the potential danger of using the area for diving. Our Supreme Court held in Brightwell, supra, at page 322-323:
"It is our conclusion that there is in this record at this stage of the cause an area of proof which might justify a jury in concluding that there was negligence on the part of the appellees which could have been the proximate cause of the girl's injury. We find this in the answer of the appellees themselves when considered in the light of the testimony that was offered in the court below. By their answer, the appellees specifically deny that the dock or platform was provided for diving purposes and on the contrary alleged that it was provided merely for swimming and sun-bathing. Despite the fact that appellees had provided this platform for a limited purpose nonetheless closely related to swimming activities, it was nevertheless established by this record that appellees were thoroughly acquainted with the fact that their customers were using the platform for diving purposes. A jury in this state of the record would be justified in concluding that if the platform area was not intended as an area suitable for diving then it was the responsibility of the owners of the amusement park to see to it that their patrons were suitably warned of the restricted usage to which the area might safely be put."
* * * * * *
"Again, we are not intending to hold that this conduct on the part of these defendants constituted negligence as a matter of law. We do here intend to hold that under the circumstances related above it was a matter within the province of the jury to determine whether the proximate cause of this girl's injury was her own negligence or carelessness in diving or whether it was the failure of the defendants below to warn her not to use the particular area of their amusement park for a purpose other than the admittedly intended purpose.
"Despite the difficulties in defining proximate cause, the established rule is that unless the minds of reasonable men could not differ as to the cause of an injury, ordinarily the problem of determining the existence of proximate cause and contributory negligence is peculiarly one for a jury."
Appellants take the position that this case is controlled by the case of Biltmore Terrace Associates v. Kegan, Fla.App.3d 1961, 130 So.2d 631. The facts in Biltmore as stated by that court are as follows:
"... The injured plaintiff, Lawrence Kegan, was a minor of fifteen, almost sixteen, and had been a guest of the hotel for some twelve days at the time of the accident. The defendant was the operator of an oceanfront, patio-pool resort hotel and as a part of its accommodations provided a patio-pool area between the front of the hotel and the ocean. This structure was located landward of the mean high water line, but the tides on occasion brought the *150 water up to the wall and to a depth of several feet. The ocean side of the patio-pool area was enclosed by a wall, approximately four feet in height. The shore and the ocean are considerably lower in level than the patio-pool area. Beyond the wall was a short projection of the patio area, which sloped downward. In addition, two concrete beams extended easterly some four feet beyond the wall.
"The plaintiff had been swimming for six years but prior to the day of his accident, he had not gone to the end of the patio-pool area. On that day he slept until noon; after breakfast he met Tim Henderson, a friend, in the patio-pool area. Tim was also a guest of the hotel and both boys were on a vacation from out of state. On this day the pool was closed because of bad weather, and no lifeguard was on duty, nor was any other person of authority present to oversee the recreation area.
"The plaintiff estimated that he talked with his friend for five or ten minutes while leaning against the wall at the east end of the patio-pool area. Because of the wind and high tides the ocean splashed against the bulkhead, which was the east end of the patio-pool area. The waves were uncommonly large and the water was murky.
"After talking with the plaintiff for awhile Tim Henderson climbed over the wall and stood on the slanted ledge on the opposite side of the wall. He waited for a minute or two for a large wave, then dived into the ocean. After Tim's dive the plaintiff climbed over the wall, onto one of the projecting beams. While standing on the beam he looked down at the water and it looked deep. After observing the water for awhile he dived in. The plaintiff struck the bottom in the very shallow water and the blow caused a complete and permanent paralysis of his body from the neck down."
The court in Biltmore, supra, under the facts above concluded that the trial court erred in not directing a verdict for the defendant at the close of the plaintiff's case on the ground that the plaintiff failed to prove negligence on the part of the defendant. In support of this conclusion the court held:
"... We think that the plaintiffs, in all of the above contentions, overlook the fact which appears uncontrovertedly from the evidence; that there was a four-foot wall at the end of the patio area. The plaintiff found it necessary to climb over this wall and assume a precarious position outside of the wall area in order to get a footing from which to dive. There was no other way by which one could enter the ocean except to climb over the wall. One who stood at the wall could clearly observe that it was located at the edge of the ocean. To require a warning under such circumstances would be as ludicrous as requiring a sign on the top of an office building reading `don't jump off here'." (Emphasis supplied)
The court, in distinguishing Brightwell, supra, from Biltmore, supra, stated on page 635:
"There is an essential difference between a platform or dock which is provided for purposes allied with bathing and a patio-pool area terminating in a wall, which bars ingress to the ocean. The physical arrangement of the four-foot wall and the projection connected on the ocean side of the wall negated the idea that the wall and projection were intended for diving purposes."
The evidence in the case before us clearly does not fall within the facts of Biltmore, supra. In this case the pier extended some 220 to 300 feet out into the Gulf of Mexico, whereas in Biltmore, supra, it could clearly be observed that the wall was located at the edge of the ocean. In this case there was no wall and, in fact, the guests were invited to go out on to the pier some 220 to 300 feet into the gulf. The guests in this case were invited to use the beach and the gulf waters for the purposes *151 of swimming. In Biltmore, supra, the patio-pool area provided for swimming terminated in a wall which barred ingress to the ocean.
The evidence in this case was sufficient for the jury to find that the appellants knew and were aware of the fact that the pier was being used for diving purposes both before and after the James Parham accident and that they were aware of the dangerous condition.
From the circumstances shown by this record it was for the jury's determination as to whether or not the appellants' were negligent for their failure to warn appellee not to use the pier for a purpose (diving) other than the admittedly intended purpose. It was also within the province of the jury to determine whether the proximate cause of appellee's injuries was his own negligence or carelessness.
Our interpretation of Biltmore, supra, is that the wall blocking the entrance to the ocean and situated at the very edge of the ocean was the turning factor of the case which precluded the question of defendant's negligence from being submitted to a jury. In the instant case a jury of reasonable men could have found, as it did, for the appellee upon the evidence before it.
In order to show that the pier was customarily used by the invitees as a diving facility, the appellee necessarily had to prove that the pier was used for such purposes frequently and customarily prior to his unfortunate dive. Therefore, the trial court was correct in permitting the introduction of such evidence.
As to the introduction into evidence of the prior accident, in order to show knowledge of the appellants as to the dangerous condition, we are faced with a different problem. The record discloses that at the time of the prior accident, of which the appellants were aware, the pier was in the same condition and had continued in the same condition from the time of that incident up to the time of the injury to the appellee. The prior accident was some three and one-half years before the accident in this case. The evidence of prior accidents has in some cases been held inadmissible because of remoteness. However, in Loftin v. Dagley, 1943, 152 Fla. 831, 13 So.2d 311, our Supreme Court on this subject stated the following:
"Nor can we say that under the circumstances the trial court erred in refusing to strike the statement of the witness as to the accident that happened to his child at the same spot some 3 years and 4 months before the accident, as being too remote in point of time. The statement was relevant and admissible to show the dangerous condition or character of the place of injury; it having been previously testified to that the same condition had prevailed continuously from the time of that incident up to the time of the injury to the plaintiff."
See also Judge Mager's dissent in Seaboard Coastline Railroad Company v. Friddle, Fla.App. 4th 1974, 290 So.2d 85, and Friddle v. Seaboard Coastline Railroad Company, 306 So.2d 97, opinion of the Supreme Court of Florida filed October 16, 1974, whereby our Supreme Court quashed the majority opinion of the Fourth District and concurred with Judge Mager as to the admissibility of prior accidents.
From the evidence contained in this record, the trial judge was eminently correct in admitting evidence of the prior accident.
Appellants next contend that appellee did not prove that they "controlled" the premises. At the pre-trial conference appellants stipulated as to "ownership of the premises and pier." This court in Sellars v. Cosby, Fla.App.2d 1974, 289 So.2d 443, held that "The principal purpose of a pre-trial conference is to simplify the issues to be tried at trial." The question of control was never an issue in this case until the appellant First Arlington Investment Corporation, filed an amendment to its motion *152 for new trial. In Lan-Chile Airlines, Inc. v. Rodriguez, Fla.App.3d 1974, 296 So.2d 498, it was held:
"The first time sovereign immunity was directly raised as an issue before the trial court was by the appellant's motion for a new trial. In our view, the fact of state ownership which appears in the record does not signify that the legal issue of sovereign immunity was tried effectively by consent either expressly or impliedly."
The issue of control not having been tried effectively by consent either expressly or impliedly, we hold that the trial court was correct in denying appellants' motion for new trial.
The other point on appeal has been considered and found to be without merit.
Affirmed.
GRIMES and SCHEB, JJ., concur.
NOTES
[1] This case was tried under the law of contributory negligence when such negligence was a complete bar to recovery.