352 So.2d 877 (1977)
PUBLIC HEALTH FOUNDATION FOR CANCER AND BLOOD PRESSURE RESEARCH, INC., Public Health Properties Corporation, Auto Owners Insurance Company and Westchester Fire Insurance Company, Appellants,
v.
Charlotte W. COLE, Appellee.
No. 76-885.
District Court of Appeal of Florida, Fourth District.
November 9, 1977.
Rehearing Denied December 27, 1977.
*878 Richard A. Sherman of Wicker, Smith, Blomqvist, Davant, McMath, Tutan & O'Hara, Miami, and Edna L. Caruso of Montgomery, Lytal, Reiter, Denney and Searcy, West Palm Beach, for appellants.
Larry Klein and Cone, Owen, Wagner, Nugent, Johnson & McKeown, West Palm Beach, for appellee.
ALDERMAN, Chief Judge.
This is an appeal by the defendants from a judgment in a negligence action. The issues are whether the trial court erred: (1) in allowing an expert witness to testify that in his opinion the plaintiff acted as a reasonably prudent person; (2) in failing to direct a verdict for the defendant; and (3) in not submitting to the jury a special verdict to determine the percentage of negligence of the plaintiff and the defendants. We find no reversible error and affirm.
Conflicts exist in the evidence. However, since it is the defendants who are contending that a directed verdict should have been entered in their favor, we must consider the evidence in the light most favorable to the plaintiff. In this light, it appears that the defendants own and operate a waterfront recreation area in Martin County, charging admission to members of the public to come onto the property. On the day of the accident, the plaintiff and her two young children, along with some friends, paid the required admission fee and were admitted to the recreation area. On the river side of the recreation area there is a seawall. Numerous people swim there and dive from the seawall into the river. The plaintiff had been there many times during her life. She was a reasonably good diver and had dived off the seawall in the same area in the past without ever hitting bottom, but *879 she had not dived there previously on this day.
The plaintiff arrived at the recreation area at about 1:30 p.m. and spent the afternoon swimming, fishing, clamming, and playing with her children. Late in the day, when the accident occurred, the water was murky and there was a glare on it from the setting sun. The river was at low tide and the water was not noticeably moving. The plaintiff was not aware of the tide conditions. No warnings were given by the defendants that the water in front of the seawall became shallow at low tide and that it was dangerous to dive at this time. The plaintiff dove off the seawall, struck the river bottom, and as a result she is paralyzed from the neck down. The jury found for the plaintiff and returned a verdict against the defendants for $600,000.00.
The defendants first contend that the trial court erred in allowing expert testimony from a psychologist who testified that his subspecialty, human engineering, is a study of all of the factors which combine to influence the decision of an individual, such as past experience, present feelings, and immediate motor response in terms of the present situation or environment. Plaintiff's counsel asked a hypothetical question which included the facts of the accident and the witness was permitted to testify that in his opinion a reasonably prudent person could have this accident because of the nature of the situation and the other facts described in the hypothetical.
The trial court allowed that testimony based upon our decision in Seaboard Coast Line Ry. Co. v. Hill, 250 So.2d 311 (Fla. 4th DCA 1971). The defendants contend, however, that the present case is governed by our later decision in Seaboard Coast Line Ry. Co. v. Kubalski, 323 So.2d 32 (Fla. 4th DCA 1975). In Hill we found that the trial court did not abuse its discretion in allowing the same psychologist to give his opinion "as to whether or not an average driver would have seen the train in time to have avoided the collision." In Kubalski, on the other hand, we held that the court erred in permitting an engineer and safety consultant to give opinion testimony as to how an average man who drives a motor vehicle will react in a line of traffic as assumed in a hypothetical question. Although different results were reached in these cases, each is based upon the premise that, if the subject of expert testimony is one beyond the ordinary understanding of the jury, such testimony is admissible. The cases, however, are factually distinguishable. In Hill there were extraordinary circumstances and the expert was allowed to opine as to how these unusual circumstances would affect the human response. In Kubalski there were no unusual circumstances to warrant any inroads upon the province of the jury to decide what the reasonable man should do or would do in that situation.
Comparing Hill and Kubalski to the facts of the present case we conclude that the situation in which the plaintiff found herself is more like that in Hill. The weather conditions, the tide, the angle of the sun, the glare and other physical conditions in existence at the time of plaintiff's accident create a situation which may be beyond the ordinary experience and understanding of the jury, as in Hill, where there was a standing train in the darkness, fog, the absence of flares and sound, and a boxcar partially blocking the lights north of the crossing. The opinion testimony in the present case is related to the deceptive quality of various factors that were present in the environment and the manner in which a person would react to these factors. The significance of and the reaction of a human being to these factors might reasonably involve a knowledge that was within the sphere of the witnesses' expertise and beyond the scope of the common knowledge of the jurors. On this basis we conclude that the trial court did not abuse its discretion in allowing the testimony in question.
The defendants next contend that the trial court erred in not directing a verdict in their favor. We find no merit to this contention, particularly in view of the fact that this case was tried under the doctrine of comparative negligence. For the trial court to have directed a verdict, it *880 would have had to find that the plaintiff's negligence was 100% the cause of her accident, and that the defendants were not in any way negligent. We conclude that there was sufficient evidence for the jury to find that the defendants' negligence contributed to the accident. Compare: First Arlington Investment Corp. v. McGuire, 311 So.2d 146 (Fla. 2d DCA 1975).
As their last point the defendants contend that the trial court erred in failing to submit a special verdict to determine the percentage of negligence of the plaintiff and the defendants. This issue has recently been resolved in Lawrence v. Florida East Coast Ry. Co., 346 So.2d 1012 (Fla. 1977). The Supreme Court there held that special verdicts shall be required in all jury trials involving comparative negligence; however, this ruling was made prospective only and has no retroactive effect. Therefore the prior rule, allowing the trial court to exercise its discretion in requiring special verdicts, as authorized in Hoffman v. Jones, 280 So.2d 431, 439 (Fla. 1973), is applicable.
The judgment is affirmed.
DOWNEY, Judge, concurring specially:
The main ultimate issues to be tried by the jury in this case were: 1) were the defendant-property owners negligent; 2) was Mrs. Cole negligent; 3) if both parties were negligent, what was the degree of each party's negligence; and 4) what damages was Mrs. Cole entitled to recover?
The evidence in this record would adequately support a jury's finding that either the property owner and Mrs. Cole were both negligent, or that one of the parties was negligent and the other not negligent. Thus, the testimony of an expert witness that under the circumstances of this case Mrs. Cole conducted herself as a reasonably prudent person would have done is, in my judgment, an unwarranted incursion into the sphere of influence belonging solely to the jury.
Mrs. Cole testified that she had lived in the area all of her life and had been swimming, fishing, and clamming in this area many times. By her own account she was a competent fisherperson and was knowledgeable about the changing of the tides. Mrs. Cole knew that because of the changing tides, the water into which she dived was shallow at low tide and deeper at high tide. She actually observed and knew the tide was going out swiftly on the afternoon in question. She testified that: "You could look around and see shallow places and deep places." Finally, after Mrs. Cole fully disclosed her intimate knowledge of the location in question and most of the environmental factors affecting the area, she was asked if she could explain why the accident happened. Her forthright reply was: "I don't know. I guess I just didn't pay enough attention to the depth of the water."
With that background plaintiff adduced the deposition testimony of Dr. Isadore Scherer, a psychologist of sound qualifications as previously noted by this court in Seaboard Coast Line Railroad Company v. Hill, 250 So.2d 311 (Fla.4th DCA 1971). Plaintiff propounded to Dr. Scherer a hypothetical question which set forth the factual setting as Mrs. Cole viewed it, including Mrs. Cole's intimate knowledge of the area. The hypothetical question ended in the following way:
"Assuming all of those factors which I have just given you, do you have an opinion as to how a reasonably prudent individual under the same circumstances and conditions as those I have given you, would act, based upon your skill, experience, education and training?"
Dr. Scherer responded:
"My opinion is that a reasonably prudent individual could get into this accident because of the nature of the situation and the other factors that you described in your hypothetical. I am making one assumption from this exhibit."
* * * * * *
"Going back to what I said before, relative to the approach to analysis of an accident, we then go to the variables such as point one, what information the individuals have before the accident occurred, *881 and I feel that if we check, the informational input to her was degraded to some extent because there was no sign that  there was no warning about whether or not she should or should not dive, so that there is no signal for danger; in other words, her set in this situation is not what it might be in order to avoid getting into an accident.
"Also, I notice that the angle she dove from on the basis of that map, was south-west, would mean that she may have been looking in the sun, and that, of course, would make it a little more difficult for her to judge the depth factor; whether she thought about it or not, I mean, it's something that one would use.
"You said the water was murky, which of course, would also interfere with the fact of making decisions relative to depth. Also, there is a statement that you made that she had been diving in that area for, or been swimming in that area for some 20-odd years, and so that the likelihood is that she dove in that, in the area, in the general area which she dove again on the day of the accident, and probably also saw others diving from time to time.
"Making decisions, one uses past habits or past recall. And if we accept the idea that she had been diving there before, she had never gotten in an accident, her experience in that area made her feel that she knew what she was doing, so that we have in a sense what is often called a human error, which is habit interference, which is a common human error in which one's past habits will have an input to what one does. And this is the decision-making process, and sometimes is hindered by the logic of the situation when there is a habit pattern to interfere. There was, from what was noted above, no signals of danger so that there was not a set to be concerned; in other words, one wasn't prepared to be able to feel that, I got to watch out, at least in the general area in which she had been swimming before, or had been visiting before, had jumped before.
"So here alertness to the situation is downgraded because of that factor. So, in the sense she acted from reduced observation, that is a downgrading of the capacity to have the signals by which she can make proper judgment.
"There is the input of the human error factor because of past habits. There is the possibility that she is unable to see because of the direction in which she was facing. I think, too, there are other variables that make for one acting faster in one situation than another, and this is, it is the Fourth of July. She is feeling happy. She is enjoying herself. It is a holiday, and she just jumps so that the emotional tone was set for doing something like this. And it is for these reasons that I feel that I, any other person in the same situation could very well do what she did. And this would be a reasonably prudent person that would get into this situation."
After the witness concluded the answer to that hypothetical question, counsel for plaintiff asked:
"Q (By Mr. Ricci.) All right. Doctor, I'm going to ask you now on a completely different set of facts and circumstances, whether or not you are familiar with the particular facts and circumstances in this case; whether or not you have read the deposition of the plaintiff, Charlotte Cole 
"A I read the depositions.
"Q Have you read the depositions of the other eyewitnesses who were present, namely Laura Bostrum, Linda Griffin and the plaintiff's son, Carl Cole?
"A Yes, I did.
"Q Have you seen photographs of the actual accident scene?
"A I did.
"Q And you have already testified that you have seen a survey map of the area showing the detail of the area?
"A I have.
"Q All right. Based upon the information which you received from reading those depositions, viewing those photographs and looking at the survey, do you *882 have an opinion as to how a reasonably prudent individual under the same conditions and circumstances as the plaintiff in this case, would act, based on your skill, experience, education and training, an opinion other than the one which you have already given us in the hypothetical? (Emphasis added.)
"A No. That's my answer to the question, your hypothetical."
The foregoing testimony was admitted over appellant's objection, the trial court relying upon the Hill case, supra, as authority.
I am cognizant of the trend which often leads to cases being tried as a battle of experts. The breadth and scope of expert testimony seems to be ever increasing.[1] But if we have reached a point in time when in a negligence suit an expert can render his opinion on one of the main ultimate issues the jury is to decide then we have eliminated one of the most important functions which juries perform, viz., determination of what a reasonable person would do under a specified set of circumstances. In Hill, supra, this Court held that Dr. Scherer was competent to render an opinion as to whether an average driver would have seen the train with which the plaintiff's decedent had collided in time to have avoided the collision. This court pointed out that the subject matter of the opinion was not just the visibility of the train but also the deceptive quality of the various other factors that were present in the environment as shown by the evidence. And so the court ruled that "[t]he significance of and the reaction of a human being to these factors might reasonably be held to involve a knowledge that was within the sphere of the witness' expertise and beyond the scope of the common knowledge of jurors." 250 So.2d at 315. The environmental factors referred to were darkness, fog, a black street, dark railroad cars, and lights beyond the crossing. With all the complimentary things which have been written about the wisdom of juries in past cases can it seriously be said that juries need an expert to tell them that darkness, fog, dark streets, absence of flares, and dark objects such as railroad cars diminish the perception of an auto driver at night? And if those things are matters of common knowledge then the expert testimony is not admissible. Johnson v. State, 314 So.2d 248 (Fla.1st DCA 1975).
It might be that an expert's description of the effect which certain observations have on one's senses would be helpful to a jury if they involve obscure situations not ordinarily experienced by the average man. But to hypothesize routine experiences and then call upon the expert to opine whether a party's conduct was negligent is a complete usurpation of the jury's function and purpose. Yet, that is just about what happened in Hill, when the expert was allowed to testify that, because of the environmental factors involved there (the darkness, fog, absence of lights or flares, dark railroad cars and lights beyond the railroad tracks), an average driver would not have seen the train in time to have avoided the collision.
Nor do I believe in the present case that we could resort to the harmless error rule to justify this decision. It is impossible to determine the neutralizing effect of Dr. Scherer's testimony on the other evidence of Mrs. Cole's negligence. For aught we know, that testimony could have persuaded the jury that Mrs. Cole was totally free of negligence because, as he testified, "a reasonably prudent individual could get into this accident... ."
In my judgment the decision in Hill approving the admissibility of Dr. Scherer's testimony concerning what the average driver would do or not do is an unhappy one. However, it is a decision of this court and I feel constrained to follow it.
*883 I therefore reluctantly concur with Judge Alderman that the judgment appealed from must be affirmed.
PARHAM, Associate Judge, dissenting:
I must respectfully dissent from the majority opinion. Specifically, I agree with all of the concurring opinion of Judge James Downey, including his conclusion that allowing Dr. Scherer's testimony as described could not be held as harmless error. However, I depart as to following the precedent in Hill. The decision in Seaboard Coast Line Railroad Company v. Hill, 250 So.2d 311 (Fla.4th DCA 1971) is such a departure from precedent that it should not be followed. It is bad law and should be set aside.
The Defendant in this case was entitled to have the Plaintiff's wrongdoing, her contributory or comparative negligence evaluated without the taint of the opinion of this self-styled "human engineer".
For the above reasons I do respectfully dissent.
NOTES
[1] Other recent cases in which "human factors engineers" testified as experts are Seaboard Coast Line Railroad Company v. Helman, 330 So.2d 761 (Fla. 4th DCA 1976), quashed Helman v. Seaboard Coast Line Railroad Company, Fla., 349 So.2d 1187, Opinion filed July 28, 1977; Seaboard Coast Line Railroad Company v. Welfare, First District Court of Appeal, 350 So.2d 476, Opinion filed September 12, 1977.