177 So.2d 539 (1965)
Mary Ellen SWITZER, a minor, by her father and next friend, J.L. Switzer, and J.L. Switzer, Individually, Appellants,
v.
John DYE, Appellee.
No. G-273.
District Court of Appeal of Florida. First District.
July 29, 1965.
*540 Robinson & Randle, Jacksonville, for appellants.
Milam, Ramsay & Martin, and Cox, Grissett & Webb, Jacksonville, for appellee.
TAYLOR, HUGH M., Associate Judge.
This is an appeal by the plaintiffs from a judgment dismissing with prejudice a complaint seeking damages for injuries susstained by a minor child twelve years old when she dived from a pier owned by the defendant.
It is alleged that the pier was privately owned and maintained, that it extended about one hundred feet into a lake, that it was approximately five feet wide except for the final ten foot section which was about twenty feet wide, that it was constructed five feet above water which was, at the time of the accident, three to five feet deep, with a ladder extending from the surface of the pier into the water.
It is not alleged that there was any concealed or latent defects in the design or construction of the pier.
The minor plaintiff in company with other children was swimming from the pier when she dived in such a way as to strike the bottom of the lake and severely injure herself.
Liability of the defendant is asserted to arise from the maintenance of the described pier without signs warning against diving, or signs indicating the depth of the water or a barricade preventing access to the pier.
Plaintiffs base their case primarily upon the attractive nuisance doctrine and rely chiefly upon the cases of Carter v. Livesay Window Co.[1] and Cockerham v. R.E. Vaughan, Inc.[2] and particularly the language of the following quotation which is not emphasized omitting the emphasized portion:
"`Whether the deceased child was a trespasser upon the premises in question is not material. * * * The test to be applied in a case of this type is whether a reasonably prudent person should have anticipated the presence of children or other persons at the place where the appellee created a condition that a jury could find was an "inherently dangerous condition" or a "dangerous instrumentality" like unto an explosive substance, an inflammable material, or live wire or a spring gun.'"

This statement of the law appears first in the Carter case, but it is quoted verbatim in the Cockerham opinion.
*541 Proper analysis of this statement in its entirety clearly indicates that the facts here alleged do not bring this case within the doctrine of attractive nuisances. The terms "dangerous condition" and "dangerous instrumentality" if used alone are sufficiently vague to permit the argument that a jury should be allowed to adopt a strict or literal construction as the facts or elements of sympathy of particular cases might suggest. But the Supreme Court was careful to give examples illustrative of the sense in which these expressions were used.
Each of these examples  "explosive substances," "inflammable material," "live wire" and "spring gun"  clearly suggest an artificial condition which has strong elements of inherent danger to adults and minors alike and which minors might not be expected to appreciate. This is just another way of defining an attractive nuisance as a "trap"  an expression employed in the concurring opinion in the Carter case and frequently found in discussions of the doctrine.
It is not contended that the owner of a natural body of water can be held liable for injury resulting from children trespassing to swim or play in such water. And the Supreme Court of Florida has held several times that artificial lakes or ponds are not within the doctrine unless they are constructed so as to constitute a trap or present some unusual element of danger lurking about them not existing in ponds generally.[3]
The Court takes judicial notice of the fact that the waters of small lakes vary in depth with varying degrees of rainfall and, of course, the depth of water beneath piers on tidal waters varies with the changing tides.
The Court also takes judicial notice of the fact that the depth of water beneath a pier presents a varying risk to children of different ages. Deep water, suitable for diving by a child old enough who has learned to swim, would present a greater hazard to a child of very tender years who cannot swim. Thus, applying plaintiffs' theory, the duty of the landowner would vary with the age and training of those who might trespass upon his property, and the weather conditions preceding or state of the tide at the time of the trespass.
When these factors are considered it cannot be said that a depth of water three to five feet beneath a pier five feet above the water constitutes a trap or an unusual element of danger as applied to unauthorized persons using the pier.
Plaintiffs also cite the case of Adler v. Copeland,[4] but that case involved a drowning of a small child invited on the premises by defendant's children, and who was left playing near a swimming pool while the lady of the house went visiting. The attractive nuisance doctrine was expressly held not to be applicable, and the case was decided on the law applicable to the duties of landowners to licensees.
The count in the third amended complaint which alleged facts which, if true would have made the infant plaintiff in this case a licensee, was expressly withdrawn in the Circuit Court, so the Adler case is not applicable.
The judgment of the Circuit Court is
Affirmed.
WIGGINTON, Acting C.J., and CARROLL, DONALD K., J., concur.
NOTES
[1] Fla., 73 So.2d 411.
[2] Fla., 82 So.2d 890.
[3] Allen v. William P. McDonald Corporation, Fla., 42 So.2d 706; Lomas v. West Palm Beach Water Co., Fla., 57 So.2d 881; Newby v. West Palm Beach Water Co., Fla., 47 So.2d 527.
[4] Fla.App., 105 So.2d 594.