468 So.2d 1041 (1985)
Joe David ROBBINS, Appellant,
v.
DEPARTMENT OF NATURAL RESOURCES, State of Florida, Appellee.
No. AZ-141.
District Court of Appeal of Florida, First District.
May 7, 1985.
*1042 Joel D. Eaton of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, Miami; and Wagner, Cunningham, Vaughan & McLaughlin, Tampa, for appellant.
Jerrold K. Phillips of Brooks, Callahan & Phillips, Tallahassee, for appellee.
NIMMONS, Judge.
The genesis of this case was an unfortunate incident in July 1976 in which the then 18-year-old plaintiff/appellant was paralyzed as a result of a shallow water dive at a public swimming area at Wekiva Springs State Park near Orlando operated by the appellee, Department of Natural Resources of the State of Florida (hereafter "DNR"). The trial court granted summary judgment in favor of DNR on the ground of express assumption of risk. We agree with appellant's contention that the trial court erred and reverse.
Since the issue before us is the propriety of the summary judgment for the defendant, the facts, although in some respects in dispute, are summarized in the light most favorable to the plaintiff.
The spring-fed swimming area, for which DNR charges admission to the general public, is surrounded by a short-lipped concrete retaining wall. In the area from which the plaintiff entered the water, there is a wide concrete platform at the edge of the water. The depth of the water in front of that platform varies. In some places, it is as shallow as two feet while it is three to four feet in others. There are also occasional deeper holes in the area.[1] Although the bottom is mostly sand and gravel, there are large rocks embedded in it which stick up to within 10 to 15 inches from the surface of the water. The water is generally clear and the bottom ordinarily visible, but such visibility is obscured when the surface is interrupted by such things as the splashing of other swimmers. Reflections from the late afternoon sun can also affect visual depth determination.
In the winter of 1975-1976, the springs' retaining wall was substantially renovated. After completion, the springs were opened for swimming again in May 1976. According to the testimony of an expert, the configuration of the retaining wall and concrete platform invited diving, which situation called for measures to prevent injury including the erection of a rail at the edge of the platform to prevent diving or of adequate warning signs regarding the danger of diving in the area.
After the springs were reopened in May 1976, according to the assistant park superintendent and one of the lifeguards, they began to experience problems with diving in that area resulting in minor injuries such as "nose scrapes." As a result, the park's *1043 superintendent and his assistant discussed the need for "no diving" signs. From the deposition testimony of various witnesses, a jury could properly conclude that no such signs had been erected prior to the accident, nor had a rail been placed at the edge of the platform. Also, there were no markers or signs indicating water depth. Instead, the lifeguards were simply instructed to enforce a no-diving policy.
In the late afternoon of July 21, 1976, the plaintiff and five friends paid the required admission price to the park and proceeded to the springs to swim. It was the plaintiff's first visit to the park. There were two lifeguards in the area. Two or three of his friends jumped into the water first. The plaintiff then jumped in, swam around a little and climbed out of the water. He testified that he did not see the bottom of the springs or any of the rocks embedded in the bottom, nor did he touch bottom during his first experience in the water. While some of his friends were still in the water, the plaintiff, thinking that it was safe to dive, made a short running start and executed a dive in the same general area from the concrete platform. His head struck an object on the bottom which, according to the plaintiff, felt "like a cement wall or something." His injuries resulted in quadriplegia.
As previously noted, the trial court granted DNR's motion for summary judgment, the court relying upon the defense of express assumption of risk. The motion was heard at a pretrial conference at which counsel for DNR presented a memorandum of law in support of the motion. Such memorandum was the first time that DNR had asserted a right to rely upon the affirmative defense of express assumption of risk. DNR's answer had failed to allege such defense. The summary judgment motion also failed to articulate such defense. Nevertheless, appellee takes the position that the trial court had the authority to enter summary judgment on its own motion after the pretrial conference.
Indeed, there are circumstances under which a trial court, after a pretrial conference, may properly, on its own motion, enter summary judgment, partial or otherwise. See Roberts v. Braynon, 90 So.2d 623 (Fla. 1956); Bess v. 17545 Collins Avenue, Inc., 98 So.2d 490 (Fla. 1957); Compass Enterprises, Inc. v. Earls, 397 So.2d 1039 (Fla. 5th DCA 1981); Bartlett Construction, Inc. v. Coastal Plains, Inc., 353 So.2d 892 (Fla. 3rd DCA 1978). That authority of the trial court is in recognition of the fact that a pretrial conference might progress to the point where all questions of fact are eliminated thus placing the case in a posture where the entry of judgment as a matter of law would be appropriate even though no motion therefor has been made. See Hillsborough County v. Sutton, 150 Fla. 601, 8 So.2d 401, 402 (1942); Bess, supra. It has been recognized, however, that "such procedure should be employed with an abundance of caution." Bess, supra 98 So.2d at 491. Moreover, the trial court in the instant case was obviously not relying upon its power to enter sua sponte a summary judgment after pretrial conference as contemplated by the authorities cited above. Rather, the court was acting upon the defendant's motion which had been called up for hearing at the conference. Even assuming that the summary judgment was viewed as having been entered on the court's own motion under the above authorities, nevertheless, judgment should not have been entered predicated upon an affirmative defense which had never been properly raised by the defendant. Sanctioning of such a practice could, as in the instant case, result in unfairness.
Appellant urges not only that the defense of express assumption of risk was not properly before the court for summary judgment because not pled, but also that such defense cannot, as a matter of law, be implicated in a case such as this. We disagree with appellant on this point. If the evidence in this case were to be evaluated by a jury under the express assumption of risk criteria approved in Kuehner v. Green, 436 So.2d 78 (Fla. 1983), the jury could find the following: (1) that the plaintiff had, in fact, upon his first entry into the water, *1044 become fully aware of the shallow depth of the water and the existence of the protruding rocks; (2) that he had been able to see the bottom clearly from the platform; and (3) that he subjectively recognized the risk but, nevertheless proceeded to execute his dive.[2] Such an aberrant form of participation in the recreational activity of diving would be an appropriate occasion for application of the defense of express assumption of risk, notwithstanding the fact that diving is, of course, not a contact sport and involves no other participants, Gary v. Party Time Co., Inc., 434 So.2d 338 (Fla. 3rd DCA 1983), and that no formal release, consent or waiver form was involved, Kuehner, supra.
But although a jury might properly find the existence of an express assumption of risk, the record we have before us would not support summary judgment on that theory because there exists a genuine issue of fact on an essential element of that defense. A party relying upon such defense must show that "the plaintiff subjectively appreciated the risk, giving rise to the injury." Kuehner, supra, 436 So.2d at 80. The record in this case certainly does not conclusively establish that the plaintiff actually knew of the danger of executing a dive in the area involved.
Recognizing the duty to affirm the trial court for any reason appearing in the record, Stone v. Rosen, 348 So.2d 387 (Fla. 3rd DCA 1977), we have examined the record for that purpose and can find no such reason.
The defense of implied assumption of risk has been merged into the defense of contributory negligence, and the principles of comparative negligence apply in all cases where such defense is asserted. Blackburn v. Dorta, 348 So.2d 287, 293 (Fla. 1977). And so even if it were conceded that the plaintiff should have appreciated the danger that caused his injury, principles of comparative negligence would govern. The summary judgment cannot be sustained on that basis.
DNR has failed to demonstrate, as it must, either that there was no negligence on its part proximately resulting in injury to the plaintiff, or that the plaintiff's negligence was the sole proximate cause of his injury. Clark v. Lumbermans Mutual Insurance Company, 465 So.2d 552 (Fla. 1st DCA 1985); Goode v. Walt Disney World Co., 425 So.2d 1151 (Fla. 5th DCA 1982), rev. den. mem. 436 So.2d 101 (Fla. 1983). There is evidence from which the jury might find that DNR was negligent in failing to take appropriate action, such as the placement of warning signs at strategic locations at the swimming area in order to advise swimmers of dangerous conditions which may not be apparent to them and that such negligence was a proximate cause of the plaintiff's injury. Likewise, the record does not establish conclusively that the negligence of plaintiff was the sole proximate cause of his injury.
The case of Hughes v. Roarin 20's, Inc., 455 So.2d 422 (Fla. 2nd DCA 1984), relied upon by DNR, is distinguishable because, as the opinion pointed out, the plaintiff actually tested the depth of the water before executing his dive and there was no factual dispute with respect thereto.
The instant case is more akin to Blythe v. Williams, 356 So.2d 334, 335 (Fla. 4th DCA 1978), another "diving" case, in which the Fourth District reversed summary judgment in favor of the defendant. See also Blankenship v. Davis, 251 So.2d 141 (Fla. 1st DCA 1971); compare Switzer v. Dye, 177 So.2d 539 (Fla. 1st DCA 1965), and Clark v. Lumbermans Mutual Insurance Company, supra.
The summary judgment in favor of defendant DNR is reversed, and this cause is *1045 remanded for further proceedings consistent with this opinion.[3]
Reversed and Remanded.
MILLS, J., and PEARSON, TILLMAN, (Ret.) Associate Judge, concur.
NOTES
[1] There are much deeper areas in the Wekiva Springs swimming facility, which areas are not really pertinent to the issues before us.
[2] As previously noted, our factual summary earlier appearing in this opinion was stated in the light most favorable to the plaintiff since the appeal is from a summary judgment against the plaintiff. However, in determining whether express assumption of risk is a viable defense in a case such as this, we would point out that there is additional testimony which is not so favorable to the plaintiff and which would permit a jury to find the necessary facts supporting the defense of express assumption of risk.
[3] We have not considered any possible defense of sovereign immunity which, although raised by DNR as a defense below, has not been asserted on appeal as an alternative ground for affirming the summary judgment.