782 So.2d 422 (2001)
Rabbi Israel POLEYEFF, as Personal Representative of the Estate of Eugenie Poleyeff, deceased, Appellant,
v.
SEVILLE BEACH HOTEL CORPORATION d/b/a The Seville Hotel, Appellees.
Frederica E. Breaux, as Administratrix of the Estate of Zachary Charles Breaux, deceased, Appellant,
v.
Seville Beach Hotel Corporation d/b/a The Seville Hotel, Collins 33rd Street Realty Corp. d/b/a The Saxony Hotel; CSRA, a Florida General Partnership d/b/a The Saxony Hotel and Abby Berkowitz, Hurricane Beach Rentals, Inc., Appellees.
Nos. 3D99-2137, 3D99-2212.
District Court of Appeal of Florida, Third District.
February 21, 2001.
Rehearing Denied May 4, 2001.
Abramowitz & Pomerantz and Howard L. Pomerantz (Sunrise); Nancy Little Hoffmann (Pompano Beach), for appellant Frederica E. Breaux.
Grossman & Roth (Boca Raton); Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin and Joel D. Eaton, for appellant Rabbi Israel Poleyeff.
Brian S. Keif (Hollywood) and Greenberg, Traurig and Elliot H. Scherker and Paul C. Savage, for appellee Seville Beach Hotel Corporation d/b/a The Seville Hotel.
*423 Richard E. Berman and Penny J. Sposato (Fort Lauderdale), for appellees Collins 33rd Street Realty Corp. d/b/a The Saxony Hotel; CSRA, a Florida General Partnership d/b/a The Saxony Hotel and Abby Berkowitz.
Hinshaw & Culbertson and Gina E. Caruso and Ronald L. Kammer (Fort Lauderdale), for appellee Hurricane Beach Rentals, Inc.
Before SCHWARTZ, C.J. and JORGENSON, COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN, SORONDO and RAMIREZ, JJ.

ON HEARING EN BANC
SCHWARTZ, Chief Judge.
These appeals arise from a terrible tragedy which occurred on February 20, 1997, in the Atlantic ocean off the public beach adjacent to the Seville Hotel in Miami Beach. On that date, Ms. Eugenie Poleyeff, a New York resident who was a guest at the Saxony Hotel, went three blocks away to the beach at the Seville. There, she rented a beach chair and umbrella from Hurricane Beach Rentals, which had permission from the Seville and a concession to do so from the City of Miami Beach. As she was swimming at that location, she was caught in a so-called riptide or rip current of the kind which occurs periodically in the Atlantic, as in every ocean in the world.[1] Zachary Breaux, a guest of the Seville, courageously attempted to rescue her but both were drowned.
The estates of Ms. Poleyeff and Mr. Breaux brought separate wrongful death actions in the Dade County Circuit Court against several entities, including those now before us as appellees: the Seville, the Saxony and Hurricane Beach Rentals. As to these defendants, the plaintiffs claimed violations of alleged duties to the respective decedents to warn them about, or safeguard them from, the "unseen" dangers engendered by the currents, such as by providing lifeguards or other safety equipment at the beach. The plaintiffs now appeal from separate final judgments dismissing their complaints with prejudice as to these three defendants for failure to state a cause of action.[2] After en banc consideration, we affirm.
The basis of the ruling below was our decision in Adika v. Beekman Towers, Inc., 633 So.2d 1170 (Fla. 3d DCA 1994), review denied, 640 So.2d 1106 (Fla.1994), which squarely holds that there is no non-statutory duty imposed upon a beachside hotel to warn its guests against the dangers *424 of a riptide in an adjacent part of the ocean. Because the presentations in the briefs and at oral argument before a panel of this court raised real questions of whether Adika, which is entirely determinative of the result, correctly decided the significant questions involved, the court received supplemental briefs and heard oral argument en banc. We now conclude, having considered the genuinely outstanding written and oral presentations of all sides, that Adika should be endorsed and reaffirmed.
As in Adika, we hold that an entity which does not control the area[3] or undertake a particular responsibility to do so[4] has no common law duty[5] to warn, correct, or safeguard others from naturally occurring, even if hidden, dangers common[6] to the waters in which they are found.
There is no need to repeat the policy and practical considerations outlined in Adika and in the host of cases in Florida and elsewhere which without exception support our holding. See Sperka v. Little Sabine Bay, Inc., 642 So.2d 654 (Fla. 1st DCA 1994)(owner of Holiday Inn adjoining beach and Gulf of Mexico owed no duty to guest to warn of hidden sandbar; citing and following Adika ); Princess Hotels Int'l, Inc. v. Superior Court, 33 Cal. App.4th 645, 39 Cal.Rptr.2d 457 (1995)(owner of property adjacent to federally owned beach owes no duty to warn guest of ocean's dangers; citing Adika). See generally Lupash v. City of Seal *425 Beach, 75 Cal.App.4th 1428, 89 Cal.Rptr.2d 920 (1999)(city owes no duty of care to public to provide safe beaches or warn against concealed dangers caused by natural conditions of ocean), review denied, (January 13, 2000); Swann v. Olivier, 22 Cal.App.4th 1324, 28 Cal.Rptr.2d 23 (1994)(owners of private beach where partygoer injured in surf which contained riptides, submerged rocks and hazardous drop off not responsible for injuries when they did not own or control area of ocean); Sun v. The Governmental Authorities on Taiwan, No. C94-2769 SI, 2001 WL 114443 (N.D.Cal. Jan.24, 2001)("California courts do not impose a duty on beach operators to warn guests of general dangers in the ocean. See Swann v. Olivier,...; Princess Hotels International, Inc. v. Pearson ...; see also Adika v. Beekman Towers, Inc., 633 So.2d 1170, 1171 (Fla. Dist.Ct.App.1994)(an innkeeper `has no duty to warn its guests of naturally occurring surf conditions off of a public beach.')"); Lerma v. Rockford Blacktop Constr. Co., 247 Ill.App.3d 567, 187 Ill.Dec. 323, 617 N.E.2d 531 (1993)(artificial or natural body of water not condition against which possessor of land must take precautions; park-goers entering river for recreation expected to appreciate and avoid it), appeal denied, 153 Ill.2d 560, 191 Ill.Dec. 620, 624 N.E.2d 808 (1993); DeWick v. Village of Penn Yan, 275 A.D.2d 1011, 713 N.Y.S.2d 592 (2000)(proprietor of private beach owes no duty to warn of presence of sandbar and its natural transitory conditions), leave to appeal denied, ___ A.D.2d ___, 724 N.Y.S.2d 143 (2000).
Nor is it necessary to buy entirely into the horribles with which the appellees threaten us[7] if they should lose these appeals. It is enough to say that drowning because of a natural characteristic of the very waters in which it occurs is simply one of the perhaps rapidly diminishing set of circumstances for which, without more, no human being or entity should be considered "to blame," deemed "at fault" or, therefore, held civilly liable. While the law of torts may properly serve to distribute risks among those whom society, speaking through the courts, holds responsible for a particular unwelcome event, it should not be employed to assign fault with the result that the transfer of money is requiredwhen none can be fairly said to exist. In this instance, in other words, because there is no wrong, there can be no remedy. See Penelas v. Arms Technology, Inc., 778 So.2d 1042 (Fla. 3d DCA 2001). It has also been said that
[a] common law duty exists when a court says it does because it thinks it should.
Schuster v. Banco De Iberoamerica, S.A., 476 So.2d 253, 254, 255 (Fla. 3d DCA 1985)(majority and dissenting opinions). Adika reflected our belief that the duties for which the plaintiffs so ably contend *426 should not be recognized. We still feel that way.
Affirmed.
JORGENSON, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SORONDO and RAMIREZ, JJ., concur.
SHEVIN, Judge (dissenting).
I am unable to join the majority's opinion. McKinney v. Adams, 68 Fla. 208, 66 So. 988 (1914), recognizes that there is a common law duty of care to patrons of seaside bathing establishments. Although, as recognized in Adika v. Beekman Towers, Inc., 633 So.2d 1170 (Fla. 3d DCA 1994), one count in McKinney was grounded on a long-since repealed statute, the remaining counts in the complaint were not based on statutory liability. The Florida Supreme Court held in McKinney that all counts of the complaint stated a cause of action. This holding implicitly recognized the existence of a common law duty to exercise care for the safety of persons invited onto a beach. Ide v. City of St. Cloud, 150 Fla. 806, 8 So.2d 924, 925 (1942)("It is true there was a statutory liability in the McKinney case; nevertheless, the court recognized the common law liability.").
I would reverse and remand for further proceedings.
COPE, J., concurs.
NOTES
[1] Rip Current-A current of water disturbed by an opposing current, especially in tidal waters, or by passage over an irregular bottom. Also called "rip," "rip tide," "tide rip." The American Heritage Dictionary 1120 (New College ed.1979).

When waves break, water is pushed up the slope of the shore. Gravity pulls this water back toward the sea. If it converges in a narrow, river-like current moving away from shore, it forms what is known as a rip current.
Rip currents can be 50 feet to 50 yards or more wide. They can flow to a point just past the breaking surf ... or hundreds of yards offshore. Some 80% of rescues by lifeguards at America's surf beaches are due to persons being caught in rip currents. Rip currents may pull continuously, but they can suddenly appear or intensify after a set of waves, or when there is a breach in an offshore sandbar....
United States Lifesaving Association, Rip Currents-Rivers Through the Surf (1997), available at http://www.usla.org/PublicInfo/beach-safety/ripcurrentl.shtml.
[2] Subsequently, a co-defendant, the City of Miami Beach, was also granted summary judgment. The plaintiffs' separate appeals from that judgment are now pending in this court.
[3] Compare Butler v. Sarasota County, 501 So.2d 579 (Fla.1986); McKinney v. Adams, 68 Fla. 208, 66 So. 988 (1914).
[4] The particular responsibility referred to may arise in the swimming context under such special circumstances as were present in McKinney v. Adams, 68 Fla. 208, 66 So. 988 (1914), in which, as said in Adika, the defendant "operated a public bathhouse and profited from the rental of equipment expressly intended for use while swimming in the adjacent Atlantic Ocean." See Adika, 633 So.2d at 1171; see also Pickett v. City of Jacksonville, 155 Fla. 439, 442, 20 So.2d 484, 486 (1945)("The case of McKinney v. Adams ... is cited. An examination of the case discloses that it is bottomed largely on Chapter 6189, Acts of 1911, Laws of Florida, ... and its application is limited to bath houses and other similar places at [s]easide [r]esorts. The case is not [on] point and has no bearing on the facts alleged in the case at bar.").

Both cases upon which the plaintiffs heavily rely for the proposition that liability may arise from conditions beyond the defendant's own premises treat analogous relationships. Thus, Carlisle v. Ulysses Line, Ltd., S.A., 475 So.2d 248 (Fla. 3d DCA 1985) involved the duty of a cruiseliner to warn its passengers about risks of violence they might encounter during the on-shore part of their vacation trip. Shurben v. Dollar Rent-A-Car, 676 So.2d 467 (Fla. 3d DCA 1996) concerned the similar responsibility of a rent-a-car agency to warn its customers against using the leased vehicle itself in a high crime area. (A similar duty might arise in the present context if, for example, Hurricane Rentals rented a water craft for use in an area of the ocean in which it was aware that rip currents were present.) These cases stand in contrast to the present one, in which the businesses of operating hotels and renting beach chairs only tangentially or collaterally relate to their customers' use of the ocean.
[5] Compare, e.g., McKinney; Pickett; Smith v. Jung, 241 So.2d 874 (Fla. 3d DCA 1970), cert. denied, 245 So.2d 870 (Fla.1971).
[6] Landowners may, of course, be liable for failure to correct or warn about known defects peculiar to specific areas for which they are responsible. See Florida Dep't of Natural Resources v. Garcia, 753 So.2d 72 (Fla.2000); Turlington v. Tampa Electric Co., 62 Fla. 398, 56 So. 696 (1911); Landrum v. John Doe Pit Digger, 696 So.2d 926 (Fla. 2d DCA 1997); Tarshis v. Lahaina Inv. Corp., 480 F.2d 1019 (9th Cir.1973)(hotel operator owes duty to guest to warn of dangerous condition in Pacific Ocean not known to her or obvious to ordinary intelligent person); Jackson v. TLC Assocs., 185 Ill.2d 418, 235 Ill.Dec. 905, 706 N.E.2d 460 (1998)(duty of commercial bathing beach to adult patron for underwater hazard not an inherent characteristic of body of water).
[7] These range from the hallucinatory, including the destruction of Florida's tourist industry, to the very practical, including the requirement of making exquisitely fine distinctions between and among, for example, the relative proximity of particular defendants' businesses to the beach, the extent of the particular "warnings" required and the status and expertise of particular plaintiffs in the dangers of swimming, all of which would arise if a contrary rule were adopted. In that regard, we note that the broadness of our holding pretermits the necessity of resolving, in this very case, such almost impossible issues as whether the Saxony's duty to its guest, Ms. Poleyeff, extended to the area adjacent to the Seville, whether that duty extended to Mr. Breaux either as a rescuer or as a generic user of the beach, whether the Seville's duty to Mr. Breaux extended to Ms. Poleyeff, whether its breach had any causative effect upon Mr. Breaux's actions in attempting to save her in light of his obvious knowledge of a danger which had already arisen, and on and on.