PERRY, J.
The Petitioners seek review of the decision of the Fourth District Court of Appeal in Fetterman & Assocs., P.A. v. Friedrich, 69 So.3d 965 (Fla. 4th DCA 2011). In this negligence case, the key issue is whether the Fourth District Court of Appeal imper-missibly reweighed the testimony of expert witnesses during trial. We conclude that by reweighing the evidence, the Fourth District’s decision below expressly and directly conflicts with this Court’s decisions in Cox v. St. Joseph’s Hospital, 71 So.3d 795 (Fla.2011), and Gooding v. University Hospital Building, Inc., 445 So.2d 1015 (Fla.1984), and the decisions of other district courts of appeal in Fontana v. Wilson World Maingate Condominium, 717 So.2d 199 (Fla. 5th DCA 1998), Yuniter v.A&A Edgewater of Florida, Inc., 707 So.2d 763 (Fla. 2d DCA 1998), and Schneider v. K.S.B. Realty & Investing Corp., 128 So.2d 398 (Fla. 3d DCA 1961). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
FACTS
On December 10, 2003, Robert Friedrich was in a car accident and as a result he contacted the personal injury firm of Fet-terman & Associates, P.A. (“Fetterman”), and scheduled a consultation to discuss the possibility of legal representation. On December 19, 2003, Friedrich met with an associate of the firm, and was sitting in the firm’s conference room when his chair collapsed. Friedrich fell backward, hit his head, and landed on the floor. A few minutes after the incident, Friedrich was informed that the firm had a conflict and would not be able to represent him in his auto collision case.
After the chair collapse incident, Fried-rich complained of worsening headaches and neck pain, severe back pain, extremity numbness, and sleep disturbances. Fried-rich was seen by multiple doctors for these symptoms for almost two years. Then in 2006, Friedrich underwent a spinal fusion surgery, which alleviated a majority of the symptoms.
Subsequently, Friedrich sued Fetterman for negligence on the grounds that Fried-rich was a business invitee and that Fet-terman had negligently failed to warn Friedrich of the chair’s dangerous condition.
Evidence produced at trial established that the chair was purchased new as part of a set in 1998 and was used daily without incident in the firm’s conference room until Friedrich’s accident in 2003. During that time, no one at Fetterman performed a physical inspection of the chairs, but the chairs were used daily and there was no indication that any of the chairs were not sturdy or had any problems. Engineering experts for both parties agreed that there was á manufacturing defect in the right *364 rear joint which was internal and would not be visible to the naked eye. Specifically, both experts testified that the chair collapsed because parts of the chair joint— specifically, the mortise (square hole) and the tenon (square peg) did not fit together properly and the glue used for bonding them eventually failed.
Tony Sasso, the plaintiffs expert, testified that he inspects his own chairs every six months by performing a “flex test” on the chairs.[1] Regarding the chair in question, he testified that “a hands-on inspection of the chair before the accident should have found this weak joint.” Fetterman’s expert, Farhad Booeshaghi, testified that the best inspection or test for a chair is for someone to sit on it and that any inspection, including a flex test, would not have revealed the defective joint.
Fetterman moved for a directed verdict at various points during the trial, alleging that the evidence did not establish that the firm had breached any duty and that the plaintiff had failed to establish causation. The trial court denied the motions. The jury determined Fetterman was liable for Friedrich’s injuries. Fetterman moved to set aside the verdict in accordance with prior motions for directed verdict or, in the alternative, for a new trial. These motions were denied. The trial court then issued a final judgment against Fetterman for a substantial amount.
Fetterman appealed the denial of the motion to set aside the verdict or, in the alternative, for a new trial. The Fourth District Court of Appeal reversed the trial court and ordered that a directed verdict be entered in favor of Fetterman because Friedrich had not established causation. Fetterman, 69 So.3d at 968.
Friedrich now seeks relief from this Court, asserting that the decision of the Fourth District is in express and direct conflict with this Court’s decision in Cox, Gooding, and Owens v. Publix Supermarkets, Inc., 802 So.2d 315 (Fla.2001),[2] and the decisions of other district courts of appeal in Fontana, Yuniter, and Schneider. For the reasons that follow, we find that the Fourth District erred in holding that the motion for a directed verdict should have been granted and quash the decision on review.
ANALYSIS
The issue before this Court is whether the district court reweighed legally sufficient evidence of causation from the plaintiffs expert witness that a reasonable inspection of the chair, more likely than not, would have revealed the defect of the chair prior to its collapse. In this case, the Fourth District recognized that in Florida a plaintiff seeking to establish a negligence action must demonstrate that the negligence “probably caused” the plaintiffs injury and that the plaintiffs expert testified that periodic inspections of a chair are reasonable and that an inspection of the chair should have detected the defect. Fetterman, 69 So.3d at 968 n. 2. However, the district court determined that “the jury had no basis from which to conclude that Fetterman would have discovered the defect in the chair without receiving evidence as to how long before the accident flex-testing would have revealed the defect.” Id. at 968.
*365 “[Under Florida law, all premises owners owe a duty to their invitees to exercise reasonable care to maintain their premises in a safe condition.” Owens, 802 So.2d at 330. Friedrich was Fetterman’s business invitee. As such, Fetterman owed to Friedrich a duty “(1) to use reasonable care to maintain [its] premises in a reasonably safe condition and (2) to warn the invitee of any concealed dangers that the owner knows or should know about, which are unknown to the invitee and cannot be discovered by the invitee through due care.” Morales v. Weil, 44 So.3d 173, 178 (Fla. 4th DCA 2010); see also Yuniter, 707 So.2d at 764.
In order to establish causation in a negligence action, “Florida courts follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiffs injury.” Gooding, 445 So.2d at 1018.
On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.
Id. (quoting Prosser, Law of Torts § 41(4th ed. 1971)).
Here, the issue is whether the Fourth District erred in holding that Fet-terman’s motion for a directed verdict should have been granted. In Florida, “[a]n appellate court .. •. must view the evidence and all inferences of fact in the light most favorable to the nonmoving party, and can affirm a directed verdict only where no proper view of the evidence could sustain a verdict in favor of the nonmoving party.” Owens, 802 So.2d at 329. A defendant is entitled to a directed verdict when “the plaintiff has failed to provide evidence that the negligent act more likely than not caused the injury,” but a directed verdict is improper “[i]f the plaintiff has presented evidence that could support a finding that the defendant more likely than not caused the injury.” Cox, 71 So.3d at 801 (emphasis in original). A directed verdict “is not appropriate in cases where there is conflicting evidence as to the causation or the likelihood of causation.” Id. When determining whether a directed verdict is appropriate, the reviewing court may not reweigh the evidence or substitute its judgment concerning credibility of the witnesses for that of the trier of fact. Id. at 801 (“It was within the jury’s province to evaluate [the witness’s] credibility and weigh her testimony”).
Turning to the case at hand, the Fourth District correctly recognized that, in order to establish a negligence action, Florida follows the “more likely than not” standard in proving causation, i.e., that the negligence “probably caused” the plaintiff’s injury. Fetterman, 69 So.3d at 968 n. 2. In applying the standard to this case, however, the Fourth District held that even though the plaintiffs’ expert testified that a hands-on inspection should have detected the defect, his testimony was legally insufficient to meet causation because he also testified on cross-examination that it was possible to perform an inspection and not find the defect. Id. at 968.
Based on the plaintiff’s expert’s testimony the Fourth District explained:
Even if the jury concluded that due care required Fetterman to inspect its chairs at regular six-month intervals, the *366 jury had no basis from which to conclude that Fetterman would have discovered the defect in the chair without receiving evidence as to how long before the accident flex-testing would have revealed the defect. In this case, the lack of evidence establishing when the flex-test would have revealed the defect in the chair prior to the injury was an indispensable factor in determining liability.
Id. (internal citations and footnote omitted).
A review of the district court’s opinion and the record demonstrates that the district court impermissibly reweighed the evidence and substituted its own evaluation of the evidence in place of that of the jury. The parties presented expert witnesses who provided different opinions regarding whether Fetterman should have or could have discovered the defect of the chair upon reasonable inspection.
Friedrich presented an expert witness, Tony Sasso, who testified that a “hands-on inspection of the chair before the accident should have found” the “weak joint” in the rear, right side of the chair. Sasso testified that he performs inspections on his chairs every six months, and that in the case at hand, an inspection should have revealed the defect. He stated that people should inspect their chairs even when there is no indication of a problem and that periodic inspections are reasonable. When asked “how often” he does so, Sasso stated that “[wjhenever I — probably every six months or so. Actually me and [my] wife just bought a table and chairs and I did an inspection of those chairs.” On cross-examination, Sasso stated that a hands-on inspection would have found that the right side was more flexible than the left side of the chair. He testified that he did not agree that the best way to inspect a chair was to sit on it and that sitting on a chair was not a way to inspect the chair. On cross-examination, Sasso acknowledged that it was possible to inspect a chair today, find no problem, and have it fail tomorrow. He stated that the right side of the chair in question had a slow failure but that he did not know how slow.
Fetterman’s expert, Farhad Booeshaghi, testified that the best inspection or test for a chair is for someone to sit on it and that any inspection, including a flex test, would not have revealed the defective joint. He testified that the right side of the chair was a fast failure, and that because there was no visual evidence of a problem, since the tenon and mortis are internal components, a reasonable inspection of the chair would not have revealed the defect. He stated that the best test for the stability of the chair was daily usage and that flexing the chair would not have revealed this particular defect.
As stated above, a directed verdict is not proper where there is conflicting evidence regarding causation. Cox, 71 So.3d at 801. Here, the jury was presented with conflicting testimony as to whether the negligence probably caused the injury and whether the injury would not have occurred but for the negligence. Evidence was presented that could serve as a basis to support a finding that the defendant’s negligence caused the injury, i.e., Friedrich’s expert testified that a hands-on inspection should have revealed the defect.
Based on the conflicting testimony above, whether the weak joint in the chair would have been discovered if Fetterman had a procedure in place to inspect the chair was ultimately an issue to be determined by the jury. In this case, there is sufficient “proof that the negligence probably caused the plaintiffs injury,” such that the trial court did not err in denying Fet-terman’s motion for a directed verdict. Gooding, 445 So.2d at 1018. The Fourth *367 District reweighed the evidence and substituted its judgment concerning credibility of the witnesses for that of the trier of fact. Therefore, the reversal of the trial court’s judgment and an order for a directed verdict was improper under these circumstances.
CONCLUSION
For the reasons explained above, we quash the decision of the Fourth District and remand this case for reinstatement of the trial court’s final judgment in accordance with this opinion. We also approve the decisions in Fontana, Yuniter, and Schneider, to the extent that they are consistent with this opinion.
It is so ordered.
PARIENTE, LEWIS, QUINCE, and LABARGA, JJ., concur.
POLSTON, C.J., dissents with an opinion, in which CANADY, J., concurs.

. The expert defined a flex test as follows: "[You] take the legs and also hand on the back rail and hand on the front and apply! ] pressure. This will test or flex and test the joint.” "[This] type of testing will test the flexibility of both joints and if one is significantly weaker than the other that would show a weaker joint.”

. We do not find conflict between the Fourth District’s decision below and Owens.