[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14063
Non-Argument Calendar

_____

D.C. Docket No. 3:17-cv-00588-RV-EMT

TERASA LYNN KNOLL,

Plaintiff – Appellant,

versus

PARADISE BEACH HOMES, INC.,

Defendant – Third Party Plaintiff – Appellee

JOANNE O. WILLIAMS,

Defendant – Third Party Defendant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(October 21, 2019)

Before TJOFLAT, MARCUS, and ROSENBAUM, Circuit Judges.

PER CURIAM:

After sustaining injuries resulting from a dive off a pier into the Santa Rosa Sound, Terasa Knoll sued Paradise Beach Homes ("Paradise"), which managed and marketed the vacation property where she was staying, for negligence. She now appeals the district court's order granting summary judgment in favor of Paradise. After careful review, we determine that issues of fact remain regarding whether Paradise negligently failed to warn Knoll of the dangers of diving off the pier. We vacate the grant of summary judgment in favor of Paradise and remand for further proceedings.

## I.

The parties agree on the facts. Knoll, a twenty-seven-year-old woman, was staying with some friends at a short-term vacation rental home in Pensacola Beach, Florida. The vacation property was owned by Joanne Williams[1] and exclusively managed and marketed by Paradise. The property included a 188-foot private pier. The pier, which jutted out into the Santa Rosa Sound, was advertised by Paradise as "great for boats, fishing and swimming."

On May 25, 2016, Knoll flew into Pensacola from San Francisco, California and arrived at the house around 12:45 a.m. Upon her arrival, she visited with her

---

[1] Paradise filed a third-party complaint against Williams on April 10, 2018. Williams is not a party to this appeal.

friends and "swigged" a drink of vodka.  Shortly thereafter, she and a friend, Maria Fierro, decided to go swimming.  The two women ran down the length of the pier and prepared to enter the water.  Fierro jumped into the water feet first.  Knoll dove into the water head first.  Knoll hit her head on the bottom and suffered a severe spinal injury, rendering her quadriplegic.

Knoll, who describes herself as "an experienced swimmer and diver," had previously dived "hundreds of times" into natural bodies of water all over the world.  She was a certified scuba diver and a member of her high school swim and dive team for four years.  During her deposition, she testified that she had never been to Florida and thought that she was diving into the deep waters of the ocean—rather than into the shallow depths of the Santa Rosa Sound.  The night was "completely dark," so she could not see the depth of the water surrounding the pier.  She described the water as looking like "black glass."

The water level where Knoll dove was 3 feet 8 inches; the pier was approximately two-and-a-half feet from the surface of the water.  The pier had a swim ladder near the point where the women entered the water.  There was also a faded "NO DIVING" sign stenciled onto the wooden boards.  The pier did not have any railing or lighting.

The district court granted Paradise's motion for summary judgment.  The court held that a common theme in cases imposing a duty to warn against the

3

dangers of diving into shallow water was that the property owner "either affirmatively did something that led to the injury at issue or they failed to act based on prior knowledge." The court then found that there "was no history of anyone ever diving head first off the pier, and the defendant (an off-site property manager) neither owned nor built the pier and was contractually limited in what it was required and allowed to do with respect to the property." Thus, the court held that Paradise had no duty to warn Knoll of the dangers of diving. Knoll now appeals.

## II.

As this case arises under diversity jurisdiction, we apply Florida substantive law. "In interpreting Florida law, we look first for case precedent from the Florida Supreme Court. Where we find none, we are 'bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.'" *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1021 (11th Cir. 2014) (quoting *Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F.2d 817, 820 (11th Cir. 1985) (per curiam)).

The only question before us—whether Paradise owed Knoll a duty to warn Knoll about the shallow depth—is legal. *See Wallace v. Dean*, 3 So. 3d 1035, 1046 (Fla. 2009) ("A duty of care is 'a minimal threshold legal requirement for opening the courthouse doors.'" (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992))). Under Florida premises-liability law, "the status of the

4

entrant is pertinent to the duty of care owed by the landowner." *Estate of Marimon ex rel. Falcon v. Fla. Power & Light Co.*, 787 So. 2d 887, 890 (Fla. 3d DCA 2001). An entrant falls into one of three categories: licensee, invitee, or trespasser. *Charterhouse Assocs., Ltd., Inc. v. Valencia Reserve Homeowners Ass'n, Inc.*, 262 So. 3d 761, 764 (Fla. 4th DCA 2018). The parties here agree that Knoll was an invitee. The duties owed by a possessor of land to an invitee are twofold: "(1) to use reasonable care to maintain [its] premises in a reasonably safe condition and (2) to warn the invitee of any concealed dangers that the owner knows or should know about, which are unknown to the invitee and cannot be discovered by the invitee through due care." *Friedrich v. Fetterman & Assocs., P.A.*, 137 So. 3d 362, 365 (Fla. 2013) (alteration in original) (quoting *Morales v. Weil*, 44 So. 3d 173, 178 (Fla. 4th DCA 2010)). This case boils down to the second duty—specifically, whether Paradise had a duty to warn Knoll about the shallow depth.

## A.

We find that the Florida Supreme Court's decision in *Brightwell v. Beem*, 90 So. 2d 320 (Fla. 1956), dictates the outcome here. There, a teenage girl paid to enter an amusement park and bathing beach. *Id.* at 321. A thirty-five foot "wooden platform" extended from the shoreline into the lake. *Id.* The girl dove off the platform into the water, struck bottom, and became quadriplegic as a result. *Id.* Her fateful dive took place about two-thirds of the way down the platform

5

from shore, the water's depth was between three and three-and-a-half feet, and the platform sat about two feet above the water's surface. *Id.* The platform was not intended for diving, only for swimming and sunbathing. *Id.* at 323. Throughout the morning and the afternoon of the day of the accident, though, it had been used for diving. *Id.* One of the employees, moreover, witnessed the victim prepare to take the fateful dive. *Id.*

The material facts here are the same. Knoll, an invitee, dove off a wood pier that extended from the shoreline into the Santa Rosa Sound, a body of natural water. She too struck bottom and was rendered quadriplegic as a result. The water's depth where she dove was a little over three-and-a-half feet. Indeed, as it relates to the duty of care, the facts here are stronger than those in *Brightwell*. Knoll dove at the end of the pier, some 188 feet from the shoreline. It stands to reason that the further one goes out into the water, the more likely it is to be deeper.

Paradise argues that *Brightwell* is distinguishable on three fronts.

It first argues that a heightened duty of care attends to amusement parks. Under Florida law, however, both Knoll and the *Brightwell* plaintiff were invitees who were owed the same duty of care. *Friedrich*, 137 So. 3d at 365 (quoting *Morales*, 44 So. 3d at 178). To be sure, the *Brightwell* court cited *American Jurisprudence* to articulate the degree of care owed by the operator of a "public

6

amusement area."  90 So. 2d at 322.  Paradise reads this language to indicate that it was subject to a lesser duty of care than the *Brightwell* defendant.

Another Florida defendant has already tried to argue, based on the same passage of *Brightwell*, that amusement parks owe a heightened duty of care.  The Florida Fourth District Court of Appeals rejected the argument.  In *Sergermeister v. Recreation Corp. of America*, 314 So. 2d 626, 626–27 (Fla. 4th DCA 1975), the Fourth DCA affirmed the trial court's refusal to instruct the jury that places of public amusement are subject to a "higher degree of care."  Collecting cases, the court concluded, "None of these authorities require or even suggest that an instruction of a high degree of care should be given when an amusement park is a defendant.  Rather, they, with some specificity, endorse the proposition that the duty owed is one of [r]easonable care."  314 So. 2d at 629; *see also W. Flagler Assocs., Ltd. v. Jackson*, 457 So. 2d 587, 588 (Fla. 3d. DCA 1984) (per curiam) (indicating that for a "place of amusement where large crowds congregate," the duty is to maintain the premises in a "reasonably safe condition commensurate with the business conducted").  This is precisely the same standard owed to an invitee.  *See Friedrich*, 137 So. 3d at 365 (observing a duty "to use reasonable care to maintain [its] premises in a reasonably safe condition").

Paradise next argues that the *Brightwell* defendant had knowledge of the dangerous condition, given the diving that had taken place in the day leading up to

7

the accident.  But—viewing the record in the light most favorable to Knoll—Paradise had knowledge of the dangerous condition as well.  As Knoll argues, the stenciled "NO DIVING" on the wood boards at the end of the pier gave Paradise constructive notice of the danger.  The law imposes constructive notice pursuant to the "legal duty to use reasonable care to look for, and to discover, reasonably foreseeable but not actually known dangerous conditions."  *Winn-Dixie Stores, Inc. v. Marcotte*, 553 So. 2d 213, 215 (Fla. 5th DCA 1989).  Because the stenciled warning predated Paradise's management of the property, a question of fact exists as to whether it had constructive notice of danger.  *Cf. Newalk v. Fla. Supermarkets, Inc.*, 610 So. 2d 528, 530 (Fla. 3d DCA 1992) (remanding for a jury trial on the issue of constructive notice).  Knoll could prove constructive notice by circumstantial evidence, *id.*, such as "by showing that the dangerous condition existed for such a length of time that in the exercise of ordinary care, the defendant should have known of the condition."  *Brooks v. Phillip Watts Enters., Inc.*, 560 So. 2d 339, 341 (Fla. 1st DCA 1990).

Paradise argues for the first time in its brief to this Court that "[t]here is no evidence that Paradise even knew the words were painted on the dock prior to Knoll's accident," and that the homeowner had painted it "before Paradise began managing the home."  As Knoll points out, Paradise photographed and specifically advertised the pier which casts doubt on its assertion that it had never seen the

words.  The record also contains evidence that, under the terms of the management contract, Paradise was to conduct "semi-annual inspections of the premises" and had previously hired a contractor to repair the pier.  Therefore, whether Paradise knew of the sign—or whether, given its management of the property, it "should have known"—presents an issue of fact for the jury.  *Brooks*, 560 So. 2d at 341.

And Florida premises-liability law does not distinguish between actual and constructive notice in imposing a duty to invitees.  *See Friedrich*, 137 So. 3d at 365 (quoting *Morales*, 44 So. 3d at 178).  Indeed, a key difference between the duty owed to invitees and trespassers, for example, is that only the former encompasses the duty to discover dangers.  *Post v. Lunney*, 261 So. 2d 146, 147 (Fla. 1972) ("He must not wil[l]fully and wantonly injure a trespasser; . . . where the visitor is an invitee, he must keep his property reasonably safe and protect the visitor from dangers of which he is, or should be aware.").  There is evidence from which a jury could find that Paradise "should have known" of the dangers of diving from the pier into the shallow water.

Paradise then argues that Knoll—who was twenty-seven years old and an experienced diver—had a greater recognition of the dangers of diving in shallow water than the fifteen-year-old plaintiff in *Brightwell*.  But as the Florida Supreme Court stated in *Brightwell*, it is "a matter within the province of the jury" to determine whether the proximate cause of Knoll's injuries was the defendant's

9

failure to warn or Knoll's own carelessness. 90 So. 2d at 323. The circumstances here—the lack of illumination, the lack of a railing on the pier, Knoll's unfamiliarity with the area, the lack of visible warning signs, Knoll's age and experience, and the conditions of the night in question—present a jury question as to comparative negligence.

B.

Having determined that *Brightwell* controls, we need not address decisions of the Florida District Court of Appeal. We find comfort in our decision, however, from an opinion of the Second DCA.

The facts in *First Arlington Inv. Corp. v. McGuire*, 311 So. 2d 146 (Fla. 2d DCA 1975) are similar to those here. In *First Arlington*, a pier—"included in [the hotel's] facilities"—extended 220 to 300 feet into a gulf. *Id.* at 147. There were no signs warning persons not to dive nor indicating the depth of the water. *Id.* at 148. Despite the presence of a four-foot railing around the border of the pier, there was evidence that persons "frequently" dove from the pier into the gulf. *Id.* The plaintiff climbed on the four-foot railing that bordered the pier, dove, struck bottom, and became paralyzed as a result. *Id.* After a jury found for the plaintiff, the defendant appealed that it was not negligent as a matter of law. *Id.* Following *Brightwell*, the Second DCA determined that it was for the jury to decide (1) if the defendants "were negligent for their failure to warn appellee not to use the pier for

10

a purpose (diving) other than the admittedly intended purpose" and (2) whether plaintiff's comparative negligence barred recovery. *Id.* at 151.

Paradise argues that, unlike in *First Arlington*, there is no evidence that the pier was customarily used for diving. But the landowner's duty to warn invitees is not limited to customary dangers: it includes concealed dangers that the landowner, through reasonable care, "should know about." *Friedrich*, 137 So. 3d at 365. That can be shown either by evidence that the condition "occurred with regularity" or that the dangerous condition had existed for long enough that the defendant should have discovered it. *Brooks*, 560 So. 2d at 341. As we explained above, whether the stenciled "NO DIVING" sign constitutes constructive notice is a question of fact for the jury.

## C.

The cases that Paradise brings to our attention from the other DCAs are not persuasive. In *Poleyeff v. Seville Beach Hotel Corp.*, 782 So. 2d 422, 424 (Fla. 3d DCA 2001) (en banc), the Third DCA, sitting *en banc*, stated, "[W]e hold that an entity which does not control the area or undertake a particular responsibility to do so has no common law duty to warn, correct, or safeguard others from naturally occurring, even if hidden, dangers common to the waters in which they are found." *Id.* (footnotes omitted). *Poleyeff* involved a drowning by a hotel guest off a *public beach*. *Id.* at 422; *see also Sperka v. Little Sabine Bay, Inc.*, 642 So. 2d 654, 654,

11

656 (Fla. 1st DCA 1994) (per curiam) (holding that a hotel did not have a duty to warn its guest of shallow depths at an adjacent "public beach area"). The court made clear that the decision hinged on the defendant's control of the premises. *See Poleyeff,* 782 So. 2d at 424 n.6 ("Landowners may, of course, be liable for failure to correct or warn about known defects peculiar to specific areas for which they are responsible."). *Poleyeff* is thus inapplicable here, where Paradise controlled the platform from which Knoll dove.[2]

Paradise also brings to our attention cases that we read to assert that shallow depths are, as a matter of law, open and obvious dangers. Stated another way, Paradise argues there was no unusual element of danger about the pier being situated above shallow water and Paradise cannot be held liable for naturally occurring conditions. For example, in *Switzer v. Dye*, 177 So. 2d 539, 541 (Fla. 1d DCA 1965), the First DCA found that a pier situated five feet above water with a depth of three to five feet was not a "trap or an unusual element of danger." Other DCAs have subsequently cited to *Switzer* for the proposition that "[s]hallow water, insufficient for diving, does not constitute a trap." *Hughes v. Roarin 20's, Inc.*, 455

---

[2] In its motion for summary judgment, Paradise argued that the duty to business invitees is a nondelegable duty of the landowner and thus, as a property management company, Paradise had no duty to Knoll. Paradise does not make this argument in its Appellee Brief. Paradise does, however, concede that "Knoll is correct that the homeowner, and in turn Paradise, exercised some degree of control over the pier." Paradise's "control" over the pier imposes a duty of care concurrent with that of the property owner. *Worth v. Eugene Gentile Builders*, 697 So. 2d 945, 947 (Fla. 4th DCA 1997).

So. 2d 422, 424 (Fla. 2d DCA 1984) (quoting *Savignac v. Dep't of Transp.*, 406 So. 2d 1143, 1146 (Fla. 2d DCA 1981)); *see also Seitz v. Surfside, Inc.*, 517 So. 2d 49, 51 (Fla. 3d DCA 1987).

These cases are inapposite though: each considered and rejected liability based on the attractive nuisance doctrine rather than on a landowner's duty toward invitees. The court in *Switzer*, for example, distinguished its holding from another case that was "decided on the law applicable to the duties of landowners to licensee." 177 So. 2d at 541. In *Hughes*, the platform from which the plaintiff dove was not part of Roarin 20's campground facility and the plaintiff was a trespasser on the other defendant's property. 455 So. 2d at 423. In *Seitz*, the court determined that Surfside owed only a limited duty to Seitz as he was a trespasser on the pier. 517 So. 2d at 50. The distinction is important because a landowner owes only a limited duty to trespassers but has a duty to warn invitees of certain dangers and, under certain circumstances, to take additional precautions. *Stewart v. Boho, Inc.*, 493 So. 2d 95, 96 (Fla. 4th DCA 1986) ("[W]here the danger is of such a nature that the owner should reasonably anticipate that it creates an unreasonable risk of harm to an invitee notwithstanding a warning or the invitee's knowledge of the danger, then reasonable care may require that additional precautions be taken for the safety of the invitee.").

13

For example, in *Savignac*, 406 So. 2d at 1146, the Second DCA found that the landowner had a duty to warn the plaintiff of the danger of diving from a bridge into shallow water. The defendant had knowledge that previous trespassers had been diving from the bridge and that the depth of the water had been substantially reduced from recent shoaling. *Id.* Given the defendant's knowledge of other trespassers, the court characterized the plaintiff as a licensee. *Id.* The court found that, because of the landowner's duty toward licensees, "some sort of warning" would have been appropriate and reversed the grant of summary judgment for the defendants. *Id.* at 1147.

Furthermore, a conclusion that diving into shallow water is an open and obvious danger does not absolve the landowner of liability but is a factor that the jury should weigh for comparative negligence. *Knight v. Waltman*, 774 So. 2d 731, 734 (Fla. 2d DCA 2000) ("The invitee's knowledge of the danger is not a complete bar to recovery, but rather triggers the application of comparative negligence."); *Ahl v. Stone Sw., Inc.*, 666 So. 2d 922, 924 (Fla. 1st DCA 1995) ("[T]he fact that the danger is known or obvious is important in determining whether the invitee may be charged with comparative negligence. It is not conclusive, however, in determining the duty of the landowner, or whether he or she acted reasonably under the circumstances."). Therefore, these cases do not go so far as to

14

demonstrate that—as a matter of law—Paradise had no duty to warn Knoll of the dangers of diving from the pier into the shallow water.

## III.

Because issues of fact remain regarding whether Paradise had constructive notice of the danger posed by dives from the pier into the shallow water and whether Knoll was comparatively negligent in attempting such a dive, we **VACATE** the district court's order granting summary judgment in favor of Paradise and **REMAND** for further proceedings consistent with this opinion.